BYRD LAUMEIER, Appellant, v. HERMAN HENRY LAUMEIER.

In Banc, April 13, 1925.

1. **CONTINUANCE: Absent Attorney: Absence of Diligence.** Where the suit was instituted sixteen months before it was called for trial and during all that time plaintiff knew of its pendency, had instituted an unsuccessful suit to prohibit its prosecution, knew that depositions in five different cities had been taken, knew that defendant was making every effort to get ready for trial, and her affidavits do not show that she made any effort to prepare for trial, and the only reason advanced for a continuance is that her attorney in New York could alone properly get up the evidence touching the matters at issue and present it in court, and he is engaged in court in said state and cannot attend the trial, although a local firm of able lawyers represented her in the prohibition suit, has represented her all the time and presents her affidavits, she shows no diligence, and the court does not abuse its discretion in denying her application for a continuance.

2. **JURISDICTION: Decided on Prohibition: Concurrence in Result.** Where this court, upon writ of prohibition, decided that the circuit

Laumeier v. Laumeier.

court had jurisdiction of the subject-matter, and thereafter a firm of attorneys entered their appearance for appellant in the circuit court and unsuccessfully asked for a continuance, the circuit court had jurisdiction of both the subject-matter and the person of appellant; and if a majority of this court, in the prohibition proceeding, concurred in denying the writ, that was a determination that the circuit court had jurisdiction of both the subject-matter and relator's person, whether or not a majority of the judges agreed in all the points of law announced in its opinion.

3. ————: **To Adjudge Legitimacy of After-born Child: By Motion to Reopen Divorce Decree.** The circuit court, in which a divorce in favor of the wife has been granted, has jurisdiction, by motion to reopen the divorce decree, not only to consider the custody and maintenance of a child thereafter born to her, but the question of its paternity, and to determine that such child was illegitimate, where the divorce decree contained no order concerning the custody and maintenance of an after-born child and failed to mention that an unborn child was anticipated. And the husband, who as defendant defaulted in the divorce suit, may raise the question of the legitimacy of the after-born child, by his motion, filed in such suit, to determine the rights and obligations of each party respecting the rights of the child born to the wife after the decree of divorce was rendered. An independent common-law action at law by the wife against the divorced father for past expenses incurred in maintaining the child is not an adequate remedy, since it could not provide for future maintenance. But the statute (Secs. 1806, 1812, R. S. 1919) provides for the care and maintenance of children born of the marriage, in all events, and is a complete remedy.

4. ————: ————: **Maintenance: Power to Grant Implies Power to Determine Legitimacy of Child.** The jurisdiction of the court to reopen a divorce decree for the purpose of determining the right of a child unmentioned therein to maintenance gives it jurisdiction to determine any question pertaining to maintenance, including the question of the paternity of the child for whose maintenance the wife asserts the husband is bound, if the question is properly presented; and it can be properly presented as a defense by the husband to a motion by the wife for maintenance, wherein she alleges that her child born after the divorce decree is his, and he denies it is his and asks the court to determine whether he should maintain it.

5. ————: ————: **Suit Pending in Another State: Prayer for Injunctive Relief.** Where the abstract of the appellant wife does not show that she, by motion, pleading, evidence introduced, or anything which appears in the record, asserted that the circuit court

was without jurisdiction to consider respondent's motion to re-open her divorce decree because the court of another state had previously acquired jurisdiction of her independent action at law for compensation for expenses incurred in maintaining her after-born child, she is not in a position on appeal to urge the pendency of such foreign suit in bar of the motion; but nevertheless that issue may be considered where respondent in his motion alleged that she brought suit against him in said other state, charging that a child was born of the marriage and that said child was his, and that an attempt was made to serve him with a writ of summons in said suit, and prayed for injunctive relief against the assertion of any claim by her against him on account of said child. But such pending action is not a bar to a consideration of the motion.

6. ———: Of Motion for Maintenance of Child: Continuation of Original Jurisdiction in Divorce Case: Pending Action in Another State. The approved method of recovering compensation by a divorced wife from her divorced husband for expenditures in maintaining their minor child is by a motion to re-open the divorce decree, and not by an independent common-law action; and such a motion is a continuation of the original divorce action and a continuation of the original jurisdiction of the court which rendered the decree of divorce; and therefore where the divorce suit was brought and the decree of divorce was rendered in a circuit court of this State, such circuit court alone has jurisdiction to entertain a motion to re-open the decree and determine whether the husband is to be charged with the maintenance of a child alleged to be born as the result of the marriage, and a court of another state to which the wife has gone has no jurisdiction of her independent common-law action for compensation for the child's maintenance, and the pendency of her said action in such other state does not bar the husband from filing his motion to re-open the divorce decree, nor the court from entertaining it.

7. ———: ———: Injunction: Further Prosecution of Maintenance Suit: Fraud upon Foreign Court. Having determined, upon a motion to re-open the decree in the original divorce suit, that plaintiff's child is illegitimate and therefore that the husband is not under legal obligation for its maintenance, the court had no jurisdiction to go further and enjoin the divorced wife from further prosecuting any suit for the maintenance of such child heretofore instituted by her in any court in another state, on the ground that such suit is a fraud upon the courts of such other state and a fraudulent attempt to deprive the courts of this State of jurisdiction. The courts of this State cannot prevent her from prosecuting her suit in the courts of another state, and whether or not such a suit would be a fraud upon them is a matter that can be determined by them alone.

8. ———: ———: ———: **As Ancillary to Statutory Action.** An injunction is usually an equitable proceeding, and a suit for divorce is a statutory proceeding; and where the court has in the divorce proceeding adjudged that the divorced husband is not the father of the child of the divorced wife and therefore is not chargeable with its maintenance, whether it could go further and, in response to his prayer for injunctive relief, enjoin the wife from prosecuting an independent common-law action for compensation for expenses incurred in maintaining the child, is not decided; but it is decided that an injunction restraining her from prosecuting such an action in another state would be wholly superfluous and would add nothing to the relief adjudged, and so much of the judgment of the trial court as enjoins her from prosecuting such an action in another state is eliminated therefrom.

9. **JUDGMENT: Correction on Appeal.** The appellate court has authority to modify a judgment rendered in the trial court and to render such judgment as should have been rendered by it.

Citations to Headnotes: Headnote 1: **Continuances,** 13 C. J. secs. 55, 71. Headnote 2: **Appearances,** 4 C. J. secs. 32, 40, 41; **Courts,** 15 C. J. sec. 324 (Anno). Headnote 3: **Divorce,** 19 C. J. secs. 809 (Anno), 819. Headnote 4: **Divorce,** 19 C. J. sec. 819 (Anno). Headnote 5: **Appeal and Error,** 13 C. J. sec. 649. Headnote 6: **Divorce,** 19 C. J. sec. 812.

Appeal from St. Louis City Circuit Court.—*Hon. Robert W. Hall,* Judge.

JUDGMENT MODIFIED AND AFFIRMED.

*T. M. Pierce* and *Samuel H. Liberman* for appellant; *Caruthers Ewing* of counsel.

(1) The petition did not state facts entitling respondent to reopen the decree. Walsh v. Walsh, 226 S. W. 236; Petrie v. Reynolds, 219 S. W. 934; Weil v. Posten, 77 Mo. 284; Otrich v. Railroad, 154 Mo. App. 420; Call v. Moll, 89 Mo. App. 386; Drolshagen v. Railroad, 186 Mo. 258; Beall v. January, 62 Mo. 434; Rollins v. Business Men's Accident Association, 204 Mo. App. 679; Secs. 1806, 1812, R. S. 1919. (2) The judgment and decree of modification were beyond the jurisdiction of the court. Windsor v. McVeigh, 93 U. S. 274; Ex parte Nielsen, 131 U. S. 176; Cizek v. Cizek, 99 N. W. 28; Seamster v. Blackstock, 83 Va. 232; 15 C. J. 731 :

Bennet v. Robinson, 180 Mo. App. 56.    (3)    The court erred in enjoining appellant from making any claim, or prosecuting her New York action.    Rankin v. Rankin, 83 Mo. App. 335; McCloskey v. McCloskey, 93 Mo. App. 393; Rutledge v. Rutledge, 177 Mo. App. 469; Bennet v. Robinson, 180 Mo. App. 56; Laumeier v. Laumeier, 237 N. Y. 357.    (4)    The court erred in overruling the application of appellant for a continuance.    Sec. 1390, R. S. 1919.    (5)    The judgment of modification deprives appellant of her liberty, property and civil rights without due process of law.    Windsor v. McVeigh, 93 U. S. 274; Baker v. Baker, 242 U. S. 393; Laumeier v. Laumeier, 237 N. Y. 357.

*Laughlin, Frumberg, Blodgett & Russell* for respondent.

(1)    Assignments of error on questions of jurisdiction must be ruled against appellant, for the reason that they again tender to this court precisely the same issues which heretofore have been tendered by her and have been decided against her:    First, by the St. Louis Court of Appeals in the prohibition suit, and second, by this court, in State ex rel. Byrd Shoemaker v. Hall, 257 S. W. 1047, 1055.    (a)    Both in the St. Louis Court of Appeals and in this court appellant urged precisely the same propositions of law which she now urges for the third time, and in each case she proceeded to a final judgment on the merits.    Coleman v. Dalton, 71 Mo. App. 14; Singer Mfg. Co. v. Spratt, 20 Fla. 122; Fayerweather v. Monson, 61 Conn. 431; 2 Cyc. 609.    (b)    The final judgment of this court in the prohibition case is *res adjudicata* of this controversy.    State v. Hall, 257 S. W. 1055.    (c)    It matters not whether the former adjudication of this court was right or wrong in law, or whether, upon the facts, its conclusion was correct or incorrect; it is nevertheless conclusive between the parties in all subsequent proceedings where the same point is in issue.    Turnverein v. Hagerman, 232 M. 702; State ex rel. v.

Mills, 231 Mo. 493; Van Fleet's Former Adjudication, p. 24. (2) The application to the circuit court to modify the divorce decree was in no sense an independent proceeding. It was a mere incident to the original action, full jurisdiction of which, having once been acquired, still continued, carrying with it the authority to make any order relating to the care and custody of any minor child claimed by either to be the child of the parties. Nor will the removal of such child from this State and its continued residence in a foreign state of country with one party oust the circuit court of its jurisdiction to hear and determine such an application when brought by the other party. Morrill v. Morrill, 83 Conn. 479; Stetson v. Stetson, 80 Me. 484; Baily v. Schrader, 34 Ind. 260; Harris v. Harris, 71 Wash. 307; State v. District Court, 128 Pac. 593; Meredith v. Krauthoff, 191 Mo. App. 187; State v. Rhoades, 29 Wash. 61; Hoffman v. Hoffman, 15 Ohio St. 427.; Lyon v. Lyon, 21 Conn. 185. See, also, Lessig v. Lessig, 136 Wis. 406; Williams v. Williams, 13 Ind. 528. (3) Jurisdiction of the parties to the divorce suit carried with it, as a matter of law, and as a derivation from the ecclesiastical law, the incidental power to make any order in modification of the divorce decree affecting the care or custody of any minor child claimed by either of the parties to be a child of the marriage. The court's power in this behalf was wholly independent of and untrammeled by the limitations of the pleadings. In re Gladys Morgan, 117 Mo. 265; Morrill v. Morrill, 83 Conn. 479; Van Fleet's Former Adjudication, p. 712; Marks v. Marks, 22 S. D. 453; Ex parte Sangster, 244 S. W. 924. (4) Where the power to modify the final decree as to custody of children is not given by direct permission of the statute, it is exercised by judicial construction, or as an inheritance from the ecclesiastical law. Bishop on Mar. & Div., sec. 1187; Harris v. Harris, 5 Kan. 46; Rich v. Rich, 88 Hun (N. Y.) 566; Brown v. Smith, 19 R. I. 319; Hall v. Green, 87 Me. 122; Husband v. Husband, 67 Ind. 583.; Johnson v. Onstead, 74 Mich. 437.; Brown v. Brightman, 136 Mass.

187; Finch v. Finch, 22 Conn. 411. See, also: Chapman v. Chapman, 269 Mo. 668. (5) The circuit court has power to modify the final decree as to custody of children from time to time as circumstances change. In re Gladys Morgan, 117 Mo. 255; In re Kohl, 82 Mo. App. 446. (6) The motion for the modification of the decree is but a continuation of the original action and not a new suit. Robinson v. Robinson, 268 Mo. 711; Cole v. Cole, 89 Mo. App. 228. (7) Even where the decree of divorce makes no provision whatever for the custody or maintenance of the child, the mother may, at a subsequent term, obtain an order modifying the decree, requiring the father to provide future means for the child's maintenance. Harris v. Harris, 5 Kan. 53; Hill v. Hill, 196 Mass. 518; Julian v. Julian, 60 Ind. App. 520; Bishop on Mar. & Div., sec. 1187; Holt v. Holt, 42 Ark. 98; Husband v. Husband, 67 Ind. 583; Connett v. Connett, 116 N. W. (Neb.) 658; Harris v. Harris, 65 Fla. 50; Shannon v. Shannon, 97 Mo. App. 119; Myers v. Myers, 91 Mo. App. 151; Chester v. Chester, 17 Mo. App. 657; In re Gladys Morgan, 117 Mo. 255. (8) Such jurisdiction extends to a child born after the divorce decree as well as to one not mentioned in the decree itself. Shannon v. Shannon, 97 Mo. App. 126; Ramsey v. Ramsey, 121 Ind. 215. (9) The adjudged and established power to modify the decree touching the care and custody of a minor child carries with it, as a necessary and incidental power, the right and duty to determine all questions which belong to the cause. Such questions include the inquiry whether a child claimed by either party to be a child of the marriage, and, therefore, a ward of the court. The authority to award the custody of children carries with it not only such powers as are expressly given, but also such as may necessarily be incidental to its exercise. Erkenbrach v. Erkenbrach, 96 N. Y. 456; Walker v. Walker, 155 N. Y. 77; Livingston v. Livingston, 173 N. Y. 377, 61 L. R. A. 800; De Vall v. De Vall, 57 Ore. 128; In re Gladys Morgan, 117 Mo. 255. (10) The evidence before the trial court showed a conspiracy on the part of

appellant and others to perpetrate a fraud upon respondent, and to procure a judgment against him in New York by extrinsic as well as by intrinsic fraud. .On this showing it was both the right and duty of the trial court to issue an injunction. State v. Hall, 257 S. W. 1055; Sharon v. Hill, 20 Fed. 1; Sharon v. Terry, 34 Fed. 337. (11) The fraud shown was an attempted fraud on the jurisdiction of the court itself. On such a showing it was the duty of the court to enjoin appellant not only to prevent the attempted fraud, but also to protect its own prior and paramount jurisdiction over the subject-matter attempted to be arrested, taken away and interfered with by proceedings in a New York court. This rule has its foundation not merely in comity, but on necessity. Rickey v. Miller, 218 U. S. 258; Prout v. Star, 188 U. S. 537; Sharon v. Terry, 36 Fed. 337; Sharon v. Sharon, 84 Cal. 424; In re Gladys Morgan, 117 Mo. 249; Ex parte Sangster, 244 S. W. 924; In re Ingenbohs, 173 Mo. App. 261; State ex rel. v. Broddus, 245 Mo. 123; State ex rel. v. Ross, 122 Mo. 435; Gas Light Co. v. Chicago, 192 Fed. 398; Zeitinger v. Hardinger, 244 Fed. 719.

WHITE, J.—This is a proceeding by defendant to modify a decree of divorce between the parties so as to determine the rights and obligations of each respecting the rights of a child born to plaintiff after the decree of divorce.

They were married July, 1918. On June 12, 1919, a decree of divorce was granted plaintiff, the court adjudging that she was the injured and innocent party, and her maiden name, Byrd Shoemaker, was restored. It is claimed by the defendant that he was tricked into the marriage, did not know it at the time, and that he never lived with plaintiff after such alleged marriage. The plaintiff claims that they did live together at various places in St. Louis, even after the suit for divorce was filed, but that defendant never acknowledged her as his wife in any public way.

The defendant was wealthy and, at the time the decree of divorce was rendered, he gave the plaintiff the sum of $20,000 in full settlement of all claims. In the decree of divorce no mention is made of alimony.

The plaintiff's petition for divorce sets out that the defendant refused to treat her as his wife or to introduce her as such to his friends, and neglected and refused to support her, and contains this:

"Plaintiff states there were no children born of this marriage."

On December 9, 1919, a son was born to the plaintiff in the city of St. Louis, and his name registered as Henry Shoemaker.

On October 27, 1922, the defendant filed his petition in the Circuit Court of the City of St. Louis, seeking to modify the decree, in which, among other things, he alleged that in September, 1922, the defendant, Byrd Shoemaker, under the name of Byrd Laumeier, brought suit in New York against the petitioner, charging that a son was born as a result of the marriage, and that an attempt was made to serve said petitioner with a writ of summons in said suit; that the defendant then began an investigation and learned that said child was born December 9, 1919, under the name of Henry Shoemaker.

The petition then pleads in the alternative that the child either is or is not the petitioner's, but avers his belief that it is not his, and alleges that the plaintiff is not a proper person to care for said child; that she consorted with low associates, that she had squandered the $20,000 he had paid her on settlement at the time the divorce decree was rendered. The petition then prays that if it be determined that the child is not the child of petitioner, the said Byrd Shoemaker and Henry Shoemaker be enjoined from asserting any claim against him, his property or estate, based upon the claim or contention that the said child is his child, but that if it be determined that the child be his, that it be awarded to him, and that appropriate orders be made to enforce his rights.

308 Mo. Sup.—14.

February 19, 1923, the plaintiff, Byrd Laumeier, filed a petition in the Supreme Court asking a writ of prohibition to prevent Judge Hall of the circuit court, in whose division the proceeding was pending, from entertaining it, on the ground that the Circuit Court of the City of St. Louis was without jurisdiction of the person of the plaintiff, or of the subject-matter of the action. This court issued preliminary rule in prohibition, to which Judge Hall made return. The matter was argued and submitted to Court in Banc, the preliminary rule was discharged, and the circuit court directed to proceed with the case. A motion to modify the opinion in that case filed by the respondent was afterwards overruled in a *per curiam* opinion, which further explained the effect of the ruling.

The matter was called for trial February 23, 1924; the plaintiff, Byrd Shoemaker, appeared by counsel and made oral application for continuance, which was overruled. The court then proceeded to take evidence, which consisted of the testimony of H. H. Laumeier, and numerous depositions taken by him in various places. He testified that he never saw the child and never heard of it until September, 1922, when he landed in New York on return from Europe, and was confronted by the plaintiff with a child which she claimed to be his; if she was pregnant at the time of the divorce she concealed the matter from him.

The files and the record of all the proceedings in the prohibition case, together with the opinion of this court, were introduced in evidence by the respondent at the trial of this case. From those files and that record it appears that the appellant in this proceeding first filed a motion to dismiss for want of jurisdiction, limiting her appearance to the purpose of the motion only. She also filed a demurrer to the petition of Laumeier on the ground that the court was without jurisdiction. Both the demurrer and the motion were overruled. These pleadings and the rulings on them, however, appear only in the

record of the prohibition case, and do not appear in appellant's abstract of the record in this case.

On the evidence introduced the trial court rendered judgment for the petitioner, finding that the child of the plaintiff was not the defendant's child. The court further found that when the plaintiff filed petition for divorce, June 6, 1919, she knew she was pregnant and concealed the fact from the court and from the defendant; that she had received from the defendant and retained $20,000 in full satisfaction of her marital rights. The judgment then recites that the plaintiff had filed a petition for writ of prohibition in the St. Louis Court of Appeals, and that the St. Louis Court of Appeals denied the writ, and that the petition for writ of prohibition was filed in the Supreme Court after the disposition of the matter in the St. Louis Court of Appeals. The court then awarded the custody of the child, Henry Shoemaker, to the plaintiff, without any right on the part of the defendant to interfere, and without any duty on his part to contribute to its support, past, present or future; and further adjudged that there was no child born of the marriage, and that the plaintiff, Byrd Shoemaker, be forever enjoined from asserting any claim against the defendant or his property or estate based on the claim that the child, Henry Shoemaker, is the child of the defendant, H. H. Laumeier, and enjoined from prosecuting against the defendant in any court the suit instituted by her in the State of New York.

I. When the case was called for trial, February 23, 1924, the plaintiff, Byrd Laumeier, *alias* Shoemaker, by her attorney, Mr. Liberman, of Jourdan, Rassieur & Pierce, presented an oral application for continuance and offered two affidavits in support of the same. The court overruled the application and error is assigned to that ruling.

Continuance.

The first affidavit, sworn to February 21, 1924, by Caruthers Ewing, attorney for Byrd Laumeier, in New York, states that H. H. Laumeier was sued by his former wife in the Supreme Court of New York, in September,

1922, and that said cause was dismissed by that court and appeal taken to the appellate division where the judgment was affirmed; that on appeal to the Court of Appeals of New York, the highest court in the State, that court reversed the judgment February 19, 1924, and the action was then pending in New York. The affidavit further states that the affiant was engaged in an important case in New York, so that he could not be in St. Louis at the time this proceeding was set for trial; that the charges against the plaintiff, Byrd Shoemaker, made by the defendant, were consciously false; that "Mrs. Laumier had never intentionally submitted to the jurisdiction of a Missouri court," but that she recognized the right of the defendant to see, and at times to have custody of the child; that he had made no provision for its support, and adds:

"Affiant states that a trial at this time of matters relating to the paternity of the child would be, in his opinion, grossly unfair, in that the truth could not be developed, and affiant, as the only lawyer familiar with the case, cannot possibly be present."

The other affidavit was by the plaintiff, Byrd Laumeier, in which she says:

"I have not intentionally entered appearance in this proceeding, nor have I authorized anyone else to enter appearance for me. I have at all times instructed my counsel not to enter appearance."

She then states that she is a citizen of New York; that she has not been served with any process in this State, and that proceeding to trial would violate her rights under the Federal Constitution and under the Constitution of Missouri, in that it would deprive her of property without due process of law and deny her equal protection of the laws; that the only counsel familiar with the facts was her attorney, Mr. Ewing, who was engaged in New York and not prepared to go to trial. She then denied the statements of H. H. Laumeier with respect to the paternity of the child, and alleged that it would require time for her to prepare her defense. She

attached as an exhibit a copy of an affidavit which she had filed in court in New York. In that attached exhibit she relates what she claims to be the facts regarding the marriage, the living together of the parties, and the birth of the child.

Neither of those affidavits conforms to any statutory requirements regarding an application for a continuance. There is a total want of any showing of diligence. This proceeding was begun October 27, 1922; the application for continuance was presented at the trial February 23, 1924, some sixteen months later. Service was had by publication immediately after the filing of the motion to reopen. The appellant had ample actual notice of the pendency of the proceeding, because between November, 1922, and January, 1923, depositions were taken in Memphis, Louisville, Chicago and St. Louis, and in New York, after due notice to appellant's attorney's, and on February, 1923, a year before the trial, appellant filed her petition for writ of prohibition in the Supreme Court to prohibit the prosecution of this suit. The affidavits do not show that appellant made any attempt whatever to prepare for trial, although she knew all the time that the respondent was making every effort to get ready for trial, nor do they state that any evidence will be produced at any future time if the case be continued.

The only reason advanced for continuance is that the attorney for appellant in New York, Mr. Caruthers Ewing, was busy and could not attend, the allegation being that he alone could properly get up the evidence and present it in court touching the matter at issue. Nevertheless, a firm of able local attorneys, Jourdan, Rassieur & Pierce, were representing appellant all the time, and had represented her in the prohibition suit.

The matter of granting a continuance is largely in the discretion of the trial court, and this court will not interfere with a ruling in that regard unless that discretion appears to have been abused. There is nothing in this case indicating an abuse of discretion in overruling the informal and oral application for continuance.

II. The appellant challenged the jurisdiction of the court to entertain the case. After the application for continuance was overruled, Mr. Liberman, of Jourdan, Rassieur & Pierce, representing the appellant, made this statement:

*Jurisdiction.*

"In view of the fact that this application has been denied at this time plaintiff is not present I decline to participate further in the hearing at this time."

The court proceeded with the trial and nothing appears in the record showing that counsel for appellant was thereafter present.

There is no denial that the court had jurisdiction of the person of appellant; in fact, the firm of attorneys mentioned, notwithstanding the statement in the affidavits for continuance, entered their appearance for appellant when the case was called. The objection is to the jurisdiction of the subject-matter. In the prohibition case, State ex rel. Shoemaker v. Hall, 257 S. W. 1047, the jurisdiction of the circuit court to entertain this case was challenged throughout; the only issue in the case was whether it had jurisdiction. It is true that a majority of the court concurred only in the result of the opinion delivered; that means that a majority of the court did not concur in all the points of law announced in the opinion, but a majority could not concur in the result without agreeing that the trial court had jurisdiction both of the person of the appellant and of the subject-matter of the proceeding. If there had been a lack of jurisdiction of either, the rule in prohibition would have been made absolute; the trial court would have had no power to proceed without jurisdiction of both the person and the subject-matter. The *per curiam* opinion, on motion to modify the opinion, shows that this court unqualifiedly held that the trial court had authority to entertain the proceeding in the form in which it was presented.

III. The subject-matter of the proceeding is shown in the petition to re-open the divorce suit. It prays the

court to consider the custody and maintenance of Henry Shoemaker, *alias* Henry Laumeier, Jr., and the question of his paternity. The appellant argues that while the court may have had jurisdiction to modify the decree by adjudging maintenance for the child, it exceeded its jurisdiction in adjudging that the after-born child was illegitimate.

That makes it necessary to examine the effect of our statute relating to the matter.

Section 1806, Revised Statutes 1919, after providing for alimony and maintenance, and custody and maintenance of children, says: "The court, on application of either party, may make such alteration, from time to time, as to the allowance of alimony and maintenance, as may be proper."

Section 1812 says: "There may be a review of any order or judgment touching the . . . care, custody and maintenance of children, or any of them, as in other cases."

It is the rule in this State that where the decree of divorce awards the custody of a minor child or children, saying nothing about the maintenance, the court nevertheless retains jurisdiction of the case for the purpose of awarding maintenance until a child comes of age and the original judgment may be modified on motion for that purpose. [Robinson v. Robinson, 268 Mo. 703, l. c. 711, and cases cited.] In that and other like cases the child, or children, were awarded to the custody of the mother and nothing was said in the decree about maintenance. The silence of the decree upon that point did not prevent the court from adjudicating that matter on a subsequent motion. In the present case the record is silent as to the custody of a child as fruit of the marriage; on the contrary the petition for divorce alleges that no children were born of the marriage, which in fact was true at that time. The question is whether the silence of the decree as to the unborn child leaves nothing upon which the court may act—nothing to modify. The "review" allowed by the statute is "touching" the "care,

custody and maintenance," and is not limited to the scope and terms of the order reviewed.

It is held in many jurisdictions that where a decree awards the custody of a child to the mother, and nothing is said about the maintenance, it is presumed that the court adjudicated the matter and the father is not liable at common law, or under the statute, for the maintenance of the child. [Husband v. Husband, 67 Ind. 583; Johnson v. Onstead, 74 Mich. 437; 19 C. J. 457.] But where the decree is silent, both as to the custody and the maintenance of a child of the marriage, the obligation of the father at common law, after the divorce, is exactly the same as it was before; that is, he is obliged to support his offspring, and that is the rule in this State. [19 C. J. 353; Viertel v. Viertel, 212 Mo. l. c. 576.] Some authorities hold that the divorced mother can recover in a common law action against the divorced father for expense incurred in maintaining the children. Such an action, however, is inadequate, because it would not provide for future maintenance. It would only mean a repetition of the suit as expense was incurred.

The weight of authority is that the proper proceeding in such a case is by petition or motion to modify the decree.

Bishop on Marriage and Divorce, Section 1186, expresses the principle this way:

"The statutes commonly, either in terms or by construction, require the jurisdiction to be exercised by the same court and in the same cause wherein the divorce proceedings transpire."

And that is the method generally approved. [Harris v. Harris, 5 Kan. 46, l. c. 53; Shannon v. Shannon, 97 Mo. App. 119, l. c. 126; Ramsey v. Ramsey, 121 Ind. 215, l. c. 224.] The Kansas case was a suit at common law by the wife against the divorced husband for expense of maintaining children awarded to the wife. The court held she could not recover, but said (l. c. 53): "Whatever rights she may have under the unfortunate circumstances of the case, can only be obtained by open-

ing the decree in the divorce case, or by proceedings based thereon, in which the court can take into consideration all the facts and circumstances surrounding the parties, and do full justice as the case requires, having reference to advances already made." In that case a child affected was born after the divorce was granted, and was not mentioned in the decree.

The opinion in the Ramsey case, 121 Ind. 1. c. 224, put it this way: "Whatever relief the mother may be entitled to, if any, growing out of the changed circumstances since the rendition of the decree, must be sought by an application to the court for a modification of the decree in reference to the support and custody of the child." That was said concerning an after-born child.

In the Missouri case (Shannon v. Shannón, 97 Mo. App. 1. c. 126), the court said: "We are satisfied that the weight of authority and reason is that the court in which the decree of divorce was granted has the power at a subsequent term, by motion or by a supplemental bill, to open the decree as to the minor children of the parties to the suit, and to make suitable orders for their care and custody and maintenance." That case affected a child born after the decree of divorce.

The case of Robinson v. Robinson, supra, was certified from the Springfield Court of Appeals (168 Mo. App. 639), and in that case (1. c. 644) the Springfield Court of Appeals approved the Shannon case, supra. Thus indirectly this court has approved the ruling in the Shannon case.

The divorced father cannot separate himself from his obligation to support the child which is the fruit of the marriage dissolved by that decree. The welfare of the children of the marriage dissolved is of paramount consideration by the court. Their care and maintenance is to be provided for at all events. The court would be deprived of the power to provide for proper care for the child in a common-law suit by the divorced wife against the husband for previous expenditures. The text of 19 C. J. (p. 357) is as follows:

"If the court fails to make order for support in the original decree for divorce, alimony, or custody of the children, it is yet within its power and duty, on proper motion, in and as part of the divorce proceeding, to make such order at any later time on due notice to the husband."

And in the same page, 359: "The proper practice in securing a modification of an order or decree for the support of children is by application in the original action, and not by the commencement of an independent suit upon new complaint"—citing authorities in support of the text. "On such motion the trial court should limit the scope to matters occurring after the granting of the divorce. But the court is not limited to any particular line of inquiry."

If children already born were not mentioned in the decree there would be no excuse for failing to mention them. At the time of the decree, an unborn child, if it were anticipated, could be provided for the same as a child already born. But, as in this case, where it is claimed that the mother did not even know she was pregnant at the time, and the alleged father did not hear of the matter until long afterwards, it is strictly an unforeseen circumstance occurring after the granting of the divorce, which, had it occurred sooner, would have been considered in making disposition of the case. On subsequent motion to reopen a divorce decree, the court may take into consideration property that has been unexpectedly acquired by the husband after the decree, then it could as appropriately take into consideration the unexpected appearance of a child. The ruling of this court in the Hall case embraced this point; this court, in holding that the circuit court had jurisdiction of the cause of action, necessarily, as stated, held that it had jurisdiction to award the custody and maintenance of a child born afterwards and not mentioned in the decree.

IV. It is claimed by appellant that while it may have been decided in the Hall case that the court had authority to provide for the maintenance of an after-born child, it

exceeded its jurisdiction in proceeding to determine the paternity of the child. It is argued that, in pleading the matter in the alternative, asking the court to determine whether such child was the child of the defendant, and if it were to provide for its maintenance, and if it were not to adjudge the defendant not liable for such maintenance, the respondent was perpetrating a fraud upon the court, working in surreptitiously the issue as to the paternity of the child.

Section 1806, as stated, provides that the court may make alteration in the matter of maintenance on the application of either party. Now, if the power to review any order touching the maintenance is comprehensive enough to include the review of a divorce proceeding and make an order touching maintenance where none was made before, as we have held in the last paragraph, then the court in exercising its authority to make an order touching maintenance can make an order denying maintenance. If the court can adjudge that the father should support a child, it may adjudge that he should be free from obligation to support the child. Undoubtedly, if the plaintiff had filed a proceeding to modify the divorce decree, so as to provide for the maintenance of the child, the defendant could have contested her claim by denying the paternity of the child. He could have brought before the court exactly the same issues which he has sought to bring in this instance. Therefore, the proceeding to open the divorce decree for the purpose of determining the matter of maintenance, gives the court jurisdiction to determine any question pertaining to maintenance, including the question of paternity of a child whose maintenance it is claimed the divorced husband should be bound for, if the question is properly presented. It would be properly presented if presented as a defense to a motion for maintenance. Is there any reason why the husband should not anticipate a claim of this character and move to reopen the case for the purpose of settling the disputed point? The motion recites that the plaintiff has asserted the existence and paternity of the child, and has

asserted a claim against the defendant for its support and maintenance—a claim which she should have presented by motion in this case instead of by an independent suit. Since she has presented her claim and demanded that the defendant recognize the child as his, and pay for its support, what is his remedy to settle the matter other than to apply to the court which granted the decree for a reconsideration of the matter of maintenance and determine whether he should maintain the child or not, and in determining that it must determine all collateral questions touching his common-law liability to support his reputed offspring.

We hold, therefore, that the circuit court, having jurisdiction of the subject-matter of the proceeding, had jurisdiction to determine all questions presented by the petition to reopen the case; that is, it had jurisdiction to decide whether the respondent was liable for the support of the child in question, and in deciding that question, to determine all questions pertinent to the inquiry.

V. Appellant presents an elaborate argument to the effect that the courts of New York first acquired jurisdiction of the subject-matter of this proceeding by the suit in New York, brought by Byrd Laumeier in September, 1922, against respondent, for expense incurred in maintaining the child, a common-law action, and therefore the courts of Missouri have no jurisdiction to entertain this proceeding. This, on the theory that the courts of Missouri have recognized as an alternative remedy, under such circumstances, that a divorced wife may sue her divorced husband at common law for the expense incurred in maintaining his child. Appellant is not in position to urge that point in this case. Her abstract does not show that she by any motion, pleading, nor by any evidence introduced, nor by anything which appears of record, asserted that this action was without jurisdiction on account of the pendency of a suit in New York. If the appellant had desired to avail himself of such suit, it would have been proper to set it

up in an answer to defendant's petition to reopen, or had offered proof that such suit was pending there in which service was had upon the defendant. But there is no such showing in the record.

It is true that the petition of respondent to reopen the case alleges that Byrd Shoemaker, under the name of Byrd Laumeier, brought suit against the petitioner, in the Supreme Court of New York, charging that a son was born as a result of the marriage, and that said son is a child of the plaintiff and "that an attempt was made to serve him with a writ of summons in said suit." There is no allegation that he was served with summons, or that a suit was properly pending.

VI. Nevertheless that issue may be considered in the case because of a prayer in respondent's petition for injunctive relief against the assertion of any claim by Byrd Shoemaker against him on account of the child.

Pending Suit as Bar.

In Paragraph III above we have seen that the approved method of recovering compensation by a divorced wife from her divorced husband for expenditures in maintaining their children is by re-opening the decree of divorce, and not by an independent common-law action. The appellant contends that a common-law action for such purpose has been approved in this State, and that a court having first acquired jurisdiction by such suit retains it to the exclusion of the court where the decree was rendered.

We will inquire what the rule is in this State regarding such a common-law action, as affected by the construction we have given our statutes. Appellant cites some Missouri cases, and there are others not cited, which seem to support the assertion that a common-law action will lie. [McCloskey v. McCloskey, 93 Mo. App. 393; Rankin v. Rankin, 83 Mo. App. 336; Winner v. Chucart, 215 S. W. 905, 202 Mo. App. 176; LaRue v. Kempf, 186 Mo. App. 57.] In each of those cases the parties resided in this State and were separated in this

State, and in each of them the husband went to another state and procured a decree of divorce against his wife; in fact, abandoned his wife and children in this State. It was held in each case that the wife in this State, when she can obtain service, may sue her husband for expenses incurred here in support of the children.. The statutes of the state in which the decree of divorce was granted are not mentioned in any of those cases. The effect of the statute, such as the Missouri statute, regarding the modification and review of a decree of divorce, is not considered. So far as our statute affects the right of the wife to pursue that remedy those cases are not in point.

It has been frequently held in this court that a motion for modification of the decree, in respect to maintenance of children of the marriage is but a continuation of the original action and not a new suit. [Robinson v. Robinson, 268 Mo. l. c. 711.] It is mentioned as a "continuation of the original jurisdiction" (Wald v. Wald, 168 Mo. App. l. c. 383); "a continuation of the original action for divorce" (Guymon v. Guymon, 245 S. W. l. c. 618). The holding is that, where a decree of divorce is rendered in  one county, the circuit court of another county has no jurisdiction to entertain an independent action affecting the rights and obligations of the parties to the divorce decree in regard to any matter of which the court in the original proceeding could take cognizance. [Cole v. Cole, 89 Mo. App. l. c. 228; In re Myrtle Kohl, 82 Mo. App. 442; State ex rel. Emory v. Porterfield, 244 S. W. 966.] In the Cole case a decree of divorce was granted to the wife in the Circuit Court of Texas County. Subsequently the husband filed a petition to review, or a motion to modify. A change of venue was awarded to Wright County. An opinion by Judge Goode analyzes the situation and holds that the statute does not authorize a change of venue in such case, and that the Circuit Court of Wright County had no jurisdiction. This on the ground that a proceeding for alteration of the decree of divorce "is a continuation of the original action. There can be no change of venue

allowed.''    Judge Goode said: "All proceedings of an ancillary character, and designed to effectuate or change a decree already entered, are commonly regarded as a part of and incidental to the original suit.''

The Myrtle Kohl case was an original *habeas corpus* proceeding in the Kansas City Court of Appeals, for the possession of a child of Peter and Kate Kohl. A decree of divorce was granted the wife in Linn County. The Kansas City Court of Appeals denied the writ on the ground that it had no jurisdiction to entertain the case. After referring to the statute, the court said [82 Mo. App. l. c. 446]: "There remains in the Linn court a continuing jurisdiction over the parties and the subject-matter. And this being so, the authorities agree that it would not be proper for this court to interfere, but rather remand the parties to the Linn Circuit Court.''

The Porterfield case was a proceeding in prohibition in the Kansas City Court of Appeals to prevent the Juvenile Court of Kansas City from taking jurisdiction of two minor children who were alleged to be neglected children under the age of seventeen years, in Jackson County. The parents of the children had been previously divorced by a decree rendered in Clay County. The preliminary rule in prohibition was made absolute on the ground that the juvenile court had no jurisdiction. The court said (244 S. W. l. c. 968): "It has been held that jurisdiction to directly change the custody of the children disposed of by the divorcing court is not elsewhere, and application must be made there.''

Thus we see that whenever the effect of our statute is taken into consideration the courts of this State have held that the jurisdiction to make orders affecting the custody or maintenance of children of a divorced pair remains in the divorce court, and in this State an action will not lie in any other court. Under these rulings, if the plaintiff, Byrd Shoemaker, had brought suit against her former husband to recover for money expended in the maintenance of her minor child in this State, in any other county or in any other court than the Circuit Court

of the City of St. Louis where the decree of divorce was rendered, we should have to hold that the court where she brought suit had no jurisdiction. So the holding by the trial court that the courts of New York had no juris-diction of the matter, which we can recognize, is in ac-cordance with the law of this State.

We are confident that the courts of New York will defer to our construction of our own statutes.

VII. The judgment provides that Byrd Shoemaker, *alias* Byrd Laumeier, be enjoined from further prose-cuting against the defendant in any court any suit heretofore instituted in New York. This

Injunction.

ruling is challenged by appellant as beyond the jurisdic-tion of the Circuit Court of the City of St. Louis. The court in its finding recites that "the attempts made by the plaintiff, on and since September 29, 1922, by suit filed in the Supreme Court of New York County, to ar-rest, take away and transfer to said New York court the right to decide the questions which belong to this court in this cause, and thereby to interfere with this court's continuing jurisdiction of the parties and of the subject-matter of the litigation by proceedings in such New York court are an attempted fraud on the jurisdic-tion of this court and are null and void."

When we come to consider the question of injunc-tion we are treading upon delicate ground. Of course we have no authority to interfere, nor to attempt to in-terfere with the proceedings of the court in New York. Our circuit court may have had the jurisdiction of the person of Byrd Shoemaker to restrain her from an in-dependent proceeding anywhere to recover for money expended in support of a minor on purely jurisdictional grounds. But courts are reluctant to render a judgment which they cannot enforce. [State v. American Land & Timber Co., 87 Am. St. 309, l. c. 319.] The trial court might render such a judgment against Byrd Shoemaker and it might be entirely nugatory; it would not prevent her from proceeding with her suit in the courts of New

York; if she should afterwards come to this State, there still would be no way to enforce the judgment of injunction except by proceeding for contempt, which would not affect the result. Yet, if judgment should be rendered in New York in favor of the plaintiff, it would not avail her in this State, in view of the exposition of the law as we have presented it above, and doubtless the courts of New York would hesitate to proceed with the case in view of our construction of our own statutes.

The finding by the trial court that the attempt to confer jurisdiction upon the courts of New York was fraudulent, is based upon the fact that the child was born in St. Louis, December 9, 1919, and the inference that the plaintiff concealed the fact from the defendant and went to New York for the purpose of depriving Missouri courts of jurisdiction of the matter. In an affidavit filed in the courts of New York, attached to her affidavit for a continuance here, appellant stated that, while in Missouri and after the decree, she suspected that she was going to give birth to a child and wrote to her former husband to that effect. He denied that he received such communication, or ever heard anything about the child until three years later. In this connection a great number of depositions were introduced, taken in various places, including the city of New York. The content of those depositions is not presented in the abstract of the record. We do not know what they say as to the maneuvering of the plaintiff. We may reasonably infer that all of the depositions taken relate to her conduct. We must assume that the trial court was fully advised as to the facts when it found that the attempt to confer jurisdiction upon the courts of New York was a fraudulent attempt to deprive the Missouri courts of jurisdiction and a fraud upon the court of New York where she filed her suit. But a fraud upon the court in New York can only be considered by that court, not by a Missouri court.

308 Mo. Sup.—15.

VIII. Another principle affecting the right of injunction, not referred to by either of the parties, appears. An injunction is usually an equitable proceeding. A suit for divorce is a statutory proceeding. No authority has been cited in this State where a court has ordered injunctive relief on behalf of either party to a divorce suit in any matter arising out of the suit, either in the original proceeding or in an ancillary action to modify, though some cases indicate, *obiter,* that injunction would lie to prevent a child of divorced parents from being moved out of the jurisdiction of the court. On the other hand, it has been held that a divorce court had no jurisdiction in a matter of alimony to divest title of real estate from the husband and vest it in the wife. [Ecton v. Tomlinson, 278 Mo. 282.] This was put upon the ground that the statute did not authorize it, but if this court could adjudge that sort of equitable relief in a divorce suit, doubtless it would have recognized the right in the case cited. Whether or not the court has jurisdiction to entertain a prayer for injunction, such as prayed for in this case and adjudged by the trial court, the defendant has a perfect remedy at law in defense of any action brought against him of the character which he seeks to restrain. A restraining order could not affect a proceeding in New York, and in this State it is wholly superfluous. The judgment of the trial court, as we have explained its purpose and effect in this opinion, affords all the relief that is necessary to protect the defendant from such suit. An injunction would add nothing to it, and therefore we find it unnecessary to go into the doubtful region of determining whether, in any event in this sort of proceeding, an injunction could be granted.

*Injunction as Ancillary to Statutory Action.*

The judgment is not in proper form. This court has authority to modify a judgment rendered by the trial court, and render such judgment here as should have been rendered there. [Chilton v. Nickey, 261 Mo. 1. c. 243-244; Wolfe v. Payne, 294 Mo. 1. c. 188; Vodicka v. Sette, 223 S. W. 1. c. 582.]

The judgment of the circuit court is, therefore, modified by eliminating that feature which enjoins the appellant from prosecuting an action against the respondent for compensation for maintaining her child, and as so modified the judgment is affirmed. All concur, except *Walker, J.*, who dissents; *Ragland, J.*, concurs in result and in all of the opinion except Paragraph VI.