HUNT *v.* HUNT.

1. A warrant against a father on a charge of kidnapping his own minor children, it not appearing that he had ever parted with his paternal right to their custody, is a nullity; and a writing executed by him while under arrest by virtue of such a warrant, and under the influence of a promise to discharge him from the arrest, purporting to surrender to the mother of the children his paternal authority, is not binding, the same being procured by duress.

:2. Where husband and wife are living in a state of separation, the county of the husband's residence is the county of the residence of the minor children, unless he has consented to their acquiring a residence elsewhere, or has voluntarily relinquished his paternal authority over them, or has been otherwise legally deprived thereof. But irrespective of residence, the ordinary of the county in which the minor children were unlawfully detained by their mother from the custody of their father had, under section 4011 of the code, jurisdiction to issue and dispose of a writ of *habeas corpus* sued out by the father to obtain the custody of the children.

3. Under the evidence in the present case, the ordinary, adjudicating upon a writ of *habeas corpus*, did not abuse his discretion in awarding the custody of the children to their paternal grandparents; and the superior court erred, on *certiorari*, in reversing the ordinary's decision.

August 6, 1894.

*Certiorari.* Before Judge HARRIS. Heard superior court. September term, 1893.

P. H. WHITAKER & SON, for plaintiff.

W. H. DANIEL, for defendant.

LUMPKIN, Justice.

This was a *habeas corpus* case, disposed of by the ordinary of Heard county, whose judgment was taken by *certiorari* to the superior court.

King Hunt, in his petition for the writ of *habeas cor-*

v 94-17

*pus*, alleged, in substance, that he was the father of the two children in controversy; that Jane Hunt illegally detained them under the pretence that the petitioner had committed them to her custody; that she was a woman of bad character, moving about from place to place, not a fit person to have the care and control of children, and that she had no means of supporting them except by her illegal and immoral practices.

In her answer, Jane Hunt denied all the allegations of the petition, except that she had the custody of the children. She alleged that she was their mother, had always supported and cared for them; that on July 10, 1891, the petitioner voluntarily, in writing, released to her the custody of the children and disclaimed any right to them; and that he was a drunkard, of immoral character, and an unfit person to have control of children.

At the hearing before the ordinary, the evidence was conflicting, though its general tendency was to show that the father of the children was a drunkard, and their mother a prostitute. It also appeared that the paternal grandfather of the children was a man of property, well able to support them; that the petitioner re-resided with his father, and that his father and mother both desired to have the children brought to their house and to take care of them. The ordinary awarded the custody of the children to the petitioner's father and mother, and his judgment was reversed by the superior court. We will now briefly notice the material questions presented for our adjudication.

1. It seems that the writing by the terms of which the father released the children to the mother was procured from him while under arrest by virtue of a warrant charging him with kidnapping these very children, and that he signed the paper under the influence of a promise that if he would do so, he would be discharged from arrest. The warrant was sued out by the mother,

who deposed, in her affidavit to obtain the same, that King Hunt committed the offence of kidnapping "by taking and conveying, forcibly and fraudulently and against her will, from her home, her minor children [naming them] with intent to remove them beyond the limits of the State of Georgia." King Hunt being the father of these children, and it not being alleged or otherwise appearing that he had ever parted with his paternal right to their custody, the warrant was a mere nullity, and consequently his signature to the paper, which was made for the purpose of being relieved from arrest under this warrant, was procured by duress, and therefore this paper was not binding upon him.

2. The respondent, Jane Hunt, further insisted that the judgment of the ordinary was erroneous because she and her children were residents of Carroll county at the time of the trial, and the ordinary of Heard county was therefore without jurisdiction in the matter. In his answer to the writ of *certiorari*, the ordinary states that no question as to jurisdiction was made during the trial, and that it did not appear that the children were residents of Carroll county. In law, the domicile of the children was that of the father, unless he had relinquished his paternal authority over them, or had been legally deprived of the same. But the jurisdiction did not depend upon the question of residence. It is settled by section 4011 of the code, which confers jurisdiction in such cases upon the ordinary of the county where the alleged illegal detention exists.

3. On the merits, we think the judgment of the ordinary was right, and that the superior court erred in reversing it. Under all the evidence, and keeping in view the best interests of the children themselves, we are satisfied that the ordinary, in the exercise of that discretion which the law confers upon him, made a wise and legal judgment in awarding the custody of the chil-

dren to their paternal grandparents, and that judgment ought not to have been disturbed. *Judgment reversed.*