### HAWKES *v.* MOBLEY, superintendent of banks, *et al.*

No. 8318.   FEBRUARY 23, 1932.   REHEARING DENIED MARCH 3, 1932.

*R. Douglas Feagin,* for plaintiff.

*Park & Strozier* and *Jones, Jones, Johnston & Russell,* for defendants.

ATKINSON, J.   T. W. Hawkes was owner of certain policies of insurance upon his life, in which his wife Rubie L. Hawkes was the designated beneficiary.   One of the policies was issued by the

Equitable Life Assurance Society of the United States (a corporation), for $5000. The others were issued by other companies for different amounts. The sum total of all the policies was $20,340. Each policy contained a clause authorizing the insured to change the beneficiary by complying with certain specifications. On August 29, 1930, the insured, being president of the Merchants & Mechanics Bank of Macon, was ascertained to be a defaulter to that institution in the amount of $91,000. The bank was taken over by the State superintendent of banks, as an insolvent institution, for liquidation. On the night of the same day the insured executed to the bank written assignments of each of the policies. In each instrument or assignment a change of beneficiary was made by designating the bank as beneficiary. These instruments were executed in duplicate, and were delivered to the bank, and one of the duplicates was filed at the home office of the respective insurers issuing the policy to which the duplicate related. Two of the companies received the assignments, but required them to be made on forms furnished by such companies. Such assignments and changes of beneficiary were re-executed on such forms and forwarded to those companies on November 25, 1930, and were accepted. T. W. Hawkes owned certain realty in the State of Florida of the supposed value of "several thousand dollars," and certain other realty in the State of Georgia of unstated value, which he also conveyed to the bank. Mrs. Hawkes joined in the deed to the realty in Florida, in order to comply with the laws of that State. T. W. Hawkes died December 27, 1930. Four days after his death Mrs. Hawkes instituted suit against the superintendent of banks, the bank, and all the insurance companies, to require them to interplead, and for a decree awarding the proceeds of the insurance policies to the petitioner, and to set aside the deeds to the realty in order that petitioner might apply to have a year's support set apart from such realty; and for general relief. The insurers answered and paid into court the amounts due on their respective policies; and they were discharged from all further liability. The petition as amended alleged all the foregoing and other facts which sufficiently appear in the decision. The superintendent of banks, and the bank filed a joint demurrer. The Equitable Life Assurance Society filed separate demurrers to the petition and to the petition as amended. All the insurance companies, having

answered and having paid the amount of their respective policies into court, were discharged from further liability, and by consent were dismissed as parties to the case, except the Equitable Life Assurance Society of the United States, which was permitted to remain a party solely for the purpose of sustaining the right of the insured to assign, without the assent of the beneficiary, the policy issued by that company. The petitioner excepted to the sustaining of the demurrers and the dismissal of her action.

■ In an ordinary life-insurance policy, where power to change the beneficiary or to assign the policy is reserved to the insured, the issuance of the policy does not confer upon the beneficiary a vested right or interest or more than an expectancy (*Nally* v. *Nally,* 74 *Ga.* 669, 58 Am. R. 458; *Ogletree* v. *Ogletree,* 127 *Ga.* 232, 55 S. E. 954), and the insured may assign the policy in payment of his debt without the consent of the beneficiary, although the beneficiary be his wife. *Farmers State Bank* v. *Kelley,* 155 *Ga.* 733, 737 (118 S. E. 197).

(*a*) The request to review and overrule the decision in *Farmers State Bank* v. *Kelley,* supra, in so far as it supports the principle ruled above, is refused. *Merchants Bank* v. *Garrard,* 158 *Ga.* 867 (124 S. E. 715, 38 A. L. R. 102).

(*b*) Where the right of the insured is reserved to change the beneficiary, the insured may change the beneficiary.

(*c*) A different ruling is not required by the decision in *Smith* v. *Head,* 75 *Ga.* 755, in which the life-insurance policy involved did not reserve to the insured the right to change the beneficiary, and the insured died without having assigned the contract or changed the beneficiary.

(*d*) In the instant case the policy issued by the Equitable Life Assurance Society of the United States designated the wife of the insured as the beneficiary. The policy provided that the insured may change the beneficiary "by a written request, . . filed at its home office, but such change shall take effect only upon the endorsement of the same hereon by the society;" also that the insured "may, without the consent of the beneficiary, surrender, assign, or pledge this policy and receive, exercise, and enjoy every benefit, right, and privilege conferred upon the insured by the terms hereof;" also that "no assignment of this policy shall be binding upon the society unless in writing and until filed in its

home office. The society assumes no responsibility for the validity of any assignment." The petition alleged that the insured executed an assignment of the policy to the bank as a creditor, embodying in said assignment a clause that the name of the beneficiary therein should be changed to the bank, also that "the attempted change of beneficiary and . . assignment" is null and void, because petitioner as designated beneficiary had a property right in the policy which could be legally divested only in the specific manner provided for in the policy and by strict compliance with the law. The particular ground of complaint alleged is that "no entry whatever of any change of the beneficiary, or of any assignment thereof, has ever been entered on or attached to the said policy by the company, or by any one else." The further allegation was made that the attorneys for the bank mailed to the company the assignment in question, and that the company "acknowledged receipt and noted it of record." *Held:* (1) In view of the rights reserved to the insured, the petitioner obtained under the policy of insurance only an expectancy, and the insured could change the beneficiary and assign the policy, without the consent of petitioner. (2) If one other than the insurer could raise the question (*Farmers State Bank* v. *Kelley, Merchants Bank* v. *Garrard,* supra), the written change of beneficiary, received and "noted of record" by the company, was substantial compliance with the provisions of the policy and as against the petitioner was a valid change of beneficiary. (3) The facts distinguish the case on this point from *Chance* v. *Simpkins,* 146 *Ga.* 519 (91 S. E. 773), in which on different facts a different result was reached, and it was said "there is no suggestion that the insurance company in this case ever consented to any change in the terms of the contract made with the insured." The facts also distinguished the case from *Thomas* v. *Metropolitan Life Insurance Co.,* 144 *Ga.* 367 (87 S. E. 303), in which the insurer was defendant, and the petition, though alleging that the insured had signed a notice to the company of a substitution of the name of the alleged transferee for that of the beneficiary, failed to allege that such notice was presented to the company for endorsement before the death of the insured. (4) If it was necessary to the validity of the paper as an assignment, as against the petitioner, to conform to the provisions of the policy as to the manner of assignment, there was in this

instance compliance with the provisions, which are only that an assignment shall be in writing and "filed" in the "home office" of the company; and the paper was valid as an assignment.

■ The policy of insurance issued by the Illinois Life Insurance Company stated that the insured may at any time, provided it is not then assigned, change the beneficiary by written notice to the company at its head office, accompanied by the policy, "such change to take effect only upon the approval of the application therefor by the company, and by endorsement of the same on the policy by the company." If the policy contained any clause as to the manner of assignment thereof, it was not set out in the petition, although there were special demurrers sufficient to call for such information. In the fourth paragraph of an amendment to the petition it appeared in substance that the insured executed the paper stating that "for value received I hereby sell, transfer, and assign unto" the bank the insurance policy in question, "and I hereby change the beneficiary named in said policy, so as to make the same payable to the said assignee;" that this paper was enclosed in a letter by the attorneys for the bank, mailed to the head office of the company, and duly received; that the company replied to the letter, stating that "previous to the assignment" the insured had borrowed from the company the full cash value, and that the assured had no equity in the policy in excess of the loan, but no objection to the assignment was stated by the company; that the company held a "policy card which goes with the policy," which stated: "Rubie Locke Hawkes, wife. Notified of the assignment to" the bank. The petition as amended alleged that at the time of the assignment petitioner had "a property and an estate" in the policy, "which could legally be divested only in the specific manner provided for in said policies, and by a strict compliance with the laws of the State of Georgia relative to such assignments and transfers; and this has not been done." *Held:*

(*a*) In view of the rights reserved to the insured, the petitioner obtained under the policy of insurance only an expectancy, and the insured could change the beneficiary and assign the policy without the consent of petitioner.

(*b*) If one other than the insurer could raise the question (*Farmers State Bank* v. *Kelley, Merchants Bank* v. *Garrard,* supra), the written change of beneficiary mailed to the head office

of the company and received without objection to the form, and the notation thereof made by the company on the "policy card which goes with the policy," was substantial compliance with the provisions of the policy as to the form of the change of beneficiary, and as against the petitioner was a valid change of beneficiary.

(c)  If one other than the insurer could raise an objection to the manner of assignment of the policy as not being in compliance with its provisions, such objection could not be maintained on demurrer in the instant case, where it does not appear that the policy in question contained restrictive provisions as to the manner of assignment.

(d)  Generally choses in action arising upon contract may be assigned in writing.  Civil Code § 3653.  A contract of life insurance may be assigned by the insured, and the assignment is good without the assent of the insurer.  Civil Code, § 2498. "One has the right to procure insurance on his own life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy."  *Rylander* v. *Allen*, 125 *Ga.* 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355).

(e)  The assignment of the policy in question is valid upon its face, and is not void on the ground, as contended, that the company did not enter the assignment on the policy.

■  It is conceded in the brief of the attorney for the plaintiff that the assignment and change of beneficiary "was entered on the other policies by the insurance companies."  Hence no question will be treated as to the right or form of assignment or change of beneficiary, as relates to the other policies of insurance involved in the case.

■  The written assignments and changes of beneficiary as relate to all the policies were substantially in the same language. The assignments purported to transfer the legal title without any restriction.  The petition alleged that the assignments were made to the assignee as a creditor.  In the light of the rulings in the preceding divisions, the several assignments and changes of beneficiary were not void as against the petitioner, as contended, on the further grounds (a) that the effect thereof was to appropriate petitioner's property to the payment of a debt of her husband; (b) that the papers were executed without the consent of petitioner;

(c) nor was the petitioner's contention meritorious that on account of her interest in the policies and failure to comply with provisions of the policies as to assignment and making changes of beneficiary the property should still be treated as the estate of the deceased insured, in order that petitioner might obtain a statutory year's support.

■ In the fifteenth paragraph of the petition it is alleged in general terms that the assignments and change of beneficiary of all the policies were void, because at the time the instruments were executed, August 29, 1930, the insured was faced with the charge of shortage and criminal prosecution for embezzlement, and he executed them under fear and duress, "with the hope and expectation" that his act "would lessen his punishment . . which he knew would ensue;" also that "his mental condition at the time . . due solely to duress and coercion" rendered him "legally incompetent" to make a contract. Other allegations were added by amendment, substantially to the effect that the conditions above stated existed at the time of the assignments, November 25, 1930; that on that date the insured was in jail on numerous charges and indictments for embezzlement growing out of his shortage; that he admitted his guilt and announced his intention of pleading guilty; that he executed the assignments in the hope and belief that it would lessen his punishment; that he was "led to believe this" by the attitude of the bank and by conversations with agents of the superintendent of banks, who had conferred with him on the day the bank was taken over by the State Banking Department; that for several years the insured was "abnormal in mind" and was so at the time, and when faced by the superintendent of banks with the charge of shortage "he was worried and harrassed to the point of desperation, and did not have a clear and rational understanding of his acts and conduct in execution of the assignments;" that on August 29, the assistants of the superintendent of banks and the directors of the bank held a meeting and "brought pressure" to bear on the insured, and promised and led him to believe that they would do everything in their power to lighten his punishment when he entered his plea of guilty in court, as he intended to do two days later, if he would "make restitution and turn over all his property" including the policies of life insurance; that the same course was pursued when the assignments were made

on November 25; that at the latter date the insured had refused bond which had been offered by his friends, because of threats which had been communicated to him as being made by depositors to the effect that "it would not be healthy for him to be released from custody . . with the insurance that he had on his life and with it having been transferred to the bank;" that, as a circumstance indicating the pressure which the bank brought to bear on the insured, one of the directors of the bank stated to a newspaper reporter a few days after August 29 that the matter was discussed in meeting, and the only reason they did not arrest insured "that night and incarcerate him in jail" after transfer of the policies was that they felt and believed that if they permitted him to go home he would kill himself and the bank would receive the proceeds of the insurance; and that as further illustration of alleged duress the following occurred: When the insured was on. his death-bed (December 27) while talking in delirium he kept repeating to persons in the room: "Don't ask me to give you any more. I have given you all I can. I have given you all I've got. Don't ask me for any more. Please take them away." *Held:*

(*a*) Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will. Civil Code § 4116. The language, "or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will," is very broad, but is to be construed in a restricted sense. *Mallory* v. *Royston Bank,* 135 *Ga.* 702 (70 S. E. 586); *Bond* v. *Kidd,* 122 *Ga.* 812 (50 S. E. 934). Allegations are to be construed most strongly against the pleader, and in a plea of duress it is essential that the facts relied upon to show duress be specially set forth. *Carswell* v. *Hartridge,* 55 *Ga.* 412. Honest intercession and persuasion is not undue influence; there must be "unlawful importunity, on account of the manner or motive of its exertion." *Potts* v. *House,* 6 *Ga.* 324, 359 (50 Am. D. 329); *Smith* v. *Atwood,* 14 *Ga.* 402 (6). The allegations of the petition show a legal and moral duty by the insured to make restitution, so far as he could, for his admitted defalcations (*Epps* v. *Anderson,* 28 *Ga. App.* 745, 113 S. E. 27), and fail to show any illegal or improper conduct of others to in-

duce him to act contrary to his free will; and consequently a good charge of duress is not alleged. The facts differ substantially from those involved in *Hunt* v. *Hunt,* 94 *Ga.* 257 (21 S. E. 515), and *Colclough* v. *Bank of Penfield,* 150 *Ga.* 316, 318 (103 S. E. 489, 490). The ruling here made should not be different when other allegations as set forth in the sixth division, relating to immoral contracts, are considered in connection with other allegations of fact stated above.

(*b*) The general allegations considered in connection with the allegations of fact do not make a good charge of mental incapacity to contract. The alleged facts differ from those alleged in *Farmers State Bank* v. *Kelley,* supra, and *Lamb* v. *Lamb,* 169 *Ga.* 567 (150 S. E. 817):

■ ·In paragraph six of the second amendment it is alleged that while the agents of the superintendent of banks and the directors of the bank had the insured "in charge on August 29th," they told him that "the more restitution he made the lighter his punishment would be on the embezzlement charges, and agreed with him that if he would convey all his property to the bank and assign his life-insurance policies and make the bank the beneficiary therein, they would help him all they could and would do all in their power to lighten his punishment and get him off with the lightest possible sentence for his offense;" that the insured "was induced by this assurance and agreed to make the conveyances;" that the "agreement and the conveyances made in pursuance thereof were illegal and immoral and contrary to the public body of the State, forbidding any agreement to stifle, suppress, hamper, or compromise a criminal prosecution;" that "the deeds to the real estate and assignments and changes of beneficiaries in the policies of insurance, whether of August 29th, 1930, or November 25th, 1930, or at any other time, were all made by T. W. Hawkes in pursuance of and because of said illegal and immoral contract and agreement aforesaid, and are therefore null and void." *Held:*

(*a*) This charge, considered in connection with other allegations of fact in the petition construed most strongly against the pleader, is that the property, greatly less than the admitted defalcation, should be in partial payment of the defalcation, and that the promise of aid to lessen the punishment referred only to aid after the admitted embezzler had· entered his intended plea of guilty.

The bank had a legal right to demand restitution, and the embezzler was under legal and moral duty to make restitution. The promised aid was post lite in character, and it is not alleged of what the aid should consist or what particular aid the promisors should render. In the circumstances the allegations do not show an attempt to satisfy the public offense or to suppress a criminal prosecution therefor, within the meaning of the Civil Code, § 4491, and do not furnish ground for setting aside the instruments made in partial restitution as illegal and immoral and contrary to public policy.

(*b*) The case differs on its facts from *Jones* v. *Dannenberg Co.*, 112 *Ga.* 426 (37 S. E. 729, 52 L. R. A. 271), *Deen* v. *Williams*, 128 *Ga.* 265 (57 S. E. 427), and similar cases where the alleged illegal contract was executed solely to suppress criminal prosecutions, and such rulings will not be extended to the case of an admitted embezzler who intends to plead guilty and does enter such plea to the indictment against him and undertakes to make partial restitution under the belief that restitution will lessen the punishment and under assurance of assistance by agents of the bank, to be rendered after the plea is entered, in lessening the punishment.

■ In paragraph 14 of the first amendment it was alleged that certain conveyances of realty in Georgia were made by the insured under the same circumstances "of duress and undue influence" outlined in the preceding division; that such conveyances were made to the bank "in the nature of security on a pre-existing debt" of the insured; that such conveyances are void, "because of the duress and undue influence" complained of in this suit; that the lands are still the property of the estate of the insured, and petitioner as his widow is entitled, as against the claims of the bank, "to a year's support out of said property;" that the defendants should be enjoined from selling such realty "until the question of duress and undue influence can be decided," so that in the event the conveyances are set aside the petitioner can have the opportunity to apply for a year's support. *Held:*

(*a*) As indicated in the fifth division of this decision, the alleged facts were insufficient to show duress or undue influence, and consequently this paragraph fails to allege ground for setting aside the conveyances of realty in Georgia.

(*b*) While this paragraph of the petition charges that the con-

veyances were made "in the nature of security on a pre-existing debt," the use of such language does not raise the question, as argued in the brief of the attorney for the plaintiff in error, that the conveyances of realty were merely as security for a pre-existing debt, and were void because not based on any new consideration. No such question was made by any of the allegations of the petition with reference to any of the property involved in the case.

■ It is alleged in paragraph 13 of the first amendment that a certain conveyance of realty in Florida, executed by the insured to the bank, "is inoperative, null and void, without the free and voluntary assent and signature of your petitioner to said deed;" that after the deed was executed the representatives of the bank "persuaded petitioner to . . sign said deed to the bank with her said husband;" that petitioner "was induced to do this, and to part with her property rights in said land to said bank, which was a creditor of . . petitioner's husband, in the belief that his punishment would be lightened if she did so, and petitioner was assured that the bank . . would take the attitude of requesting that his punishment be lightened by reason of the conveyances;" that the bank "did not undertake to do all in their power to lighten the punishment, . . but on the contrary endeavored to make it as hard for him as they could;" that the bank knew that petitioner's deed was a conveyance by her of her interest in the property "to apply on a pre-existing indebtedness of her husband;" that the deed is null and void under the law of Georgia; that petitioner repudiates the deed and prays that it be canceled as to petitioner, because in Georgia a wife can not convey her property for payment of her husband's debt, and as to her husband because at the time the deed was executed, for the reasons already alleged with reference to assignments of the life-insurance policies, "the same was not the free and voluntary act" of her husband. *Held:*

(*a*) Relatively to the deed as a conveyance by the husband, this paragraph of the petition failed to allege ground for setting aside the deed.

(*b*) In the State of Florida a wife in virtue of her marital relation has a right of dower in lands in that State owned by her husband while yet in life, which he can not divest by a deed of conveyance in which she does not join or otherwise confirm. Com-

piled General Laws of Florida, 1927, §§ 5493, 5675. See also 9 R. C. L. 582, § 25. Under the Florida law, while the right of dower in land owned by the husband in that State is inchoate while the husband yet lives, it is a property right, as against the husband, his creditors, and subsequent purchasers from him.

(*c*) In Florida a wife may transfer her separate estate by deed of conveyance in which the husband joins. Compiled General Laws of Florida, 1927, § 5674. There is no restriction upon the right in such instances to convey the property in payment of the husband's debt. In a case where the question is as to the authority of a wife to convey her interest in real estate located in Florida, the law of that State will control. 13 R. C. L. 1352, § 392; 13 R. C. L. 1248, § 285; Walling *v.* Christian & Craft Grocery Co., 41 Fla. 479 (27 So. 46, 47 L. R. A. 608).

(*d*) The allegations of paragraph 13 of the amendment to the petition fail to allege a cause of action for setting aside the deed to the land in Florida, wherein the wife joined the husband in making the conveyance.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*