26158. TUTEN (now Miller) v. TUTEN.

PER CURIAM. 1. " 'The courts of this state have no extra-territorial jurisdiction, and cannot make the citizens of foreign states amenable to their process, or conclude them by a judgment in personam, without their consent.' *Dearing v. Bank of Charleston,* 5 Ga. 497 (5); *Gates v. Shaner,* 208 Ga. 454 (67 SE2d 569) and cases cited." *Slowik v. Knorr,* 222 Ga. 669, 671 (151 SE2d 726). Therefore, although the superior court rendering a decree in a divorce action retains exclusive jurisdiction to enforce the provisions therein relating to custody of the minor children of the parties by attachment for contempt, even where subsequent to the rendition of the order the party sought to be adjudged in contempt has removed his residence to another jurisdiction, nevertheless, in order for the court to bind nonresidents by its judgments in personam there must be personal service or waiver of personal service upon such nonresidents. *Kirchman v. Kirchman,* 212 Ga. 488, 492 (93 SE2d 685); *Sternbergh v. McClure,* 217 Ga. 278, 283 (122 SE2d 217); *Connell v. Connell,* 221 Ga. 379, 380 (144 SE2d 722); s.c., 222 Ga. 765 (1) (152 SE2d 567) (wherein the defendant was personally served); *Ogletree v. Watson,* 223 Ga. 618, 619 (157 SE2d 464) and cit. This requirement has not been changed by the enactment of the 1966 Civil Practice Act (*Code Ann. Title* 81A; Ga. L. 1966, p. 609 et seq.).

Accordingly, the attempted service on the nonresident defendant by certified mail was not such service as was required by law. Since the defendant did not waive personal service, but rather filed a plea to the jurisdiction, she was not subject to the court's jurisdiction.

2. The application for contempt prays for the removal of the custody of the minor child from the appellant (to whom it was awarded by the previous orders of the court) and the award of custody to the appellee father. These prayers made the petition one in the nature of habeas corpus, which proceeding is an independent one and is not an effort to modify the original decree. *Stephens v. Sudderth,* 216 Ga. 222 (1) (115 SE2d 519). The venue of such actions is the jurisdiction where the child resides (*Hunt v. Hunt,* 94 Ga. 257 (2) (21 SE 515)), which, in this case, is England. Even if the child had been residing within the court's jurisdiction, moreover, the judgment of the court awarding custody to the appellee father would have been a mere nullity, since the action was not brought under *Code Ann.* § 74-107 or in a separate habeas corpus action. *Palmer v. Bunn,* 218 Ga. 244 (127 SE2d 372); *Thomas v. Thomas,* 221 Ga. 652 (2) (146 SE2d 724).

Therefore, the court erred in overruling the defendant's plea to the jurisdiction, in proceeding to a hearing on the merits of the contempt application in defendant's absence, and in entering a judgment finding the defendant in contempt and awarding custody of the parties' minor child to the plaintiff father.

*Judgment reversed. All the Justices concur, except Felton, J., who dissents.*

ARGUED NOVEMBER 9, 1970—DECIDED JANUARY 29, 1971.

*Gibson, McGee & Blount, J. B. McGee, Jr.,* for appellant.

Appellant and appellee, formerly wife and husband, were divorced by a final decree of Ware Superior Court in 1967, whereby the custody of the parties' minor child was awarded to the plaintiff wife, the present appellant. There was no appeal from that judgment. The record does not reveal who the appellant's attorney of record was in said case.

In a subsequent habeas corpus action brought by the former husband in the same court in 1968, a final judgment was rendered therein by stipulation of the parties, modifying the previous award. The judgment provided in part as follows: "4 (a) In the event plaintiff remarries and must change her domicile in order to be with her husband . . . , and in the event said new domicile is

more than two hundred fifty miles from the center of Waycross, Georgia, plaintiff agrees to give defendant an additional visitation period during the summer months, day for day, missed during the year on week-ends ... 6. The custodial and visitation rights hereby awarded shall be administered by said plaintiff and said defendant so as not to interfere with the health, morals, education and welfare of said minor child and so as not to restrict the parental rights of the other with said minor child, but shall be administered so as to promote and nurture a normal parent and child relationship between the father and said minor child and between the mother and said minor child ... 7. ... [I]t is the intent and contemplation of this judgment that either of said parties shall be liable and punishable for contempt for a wilful and deliberate disregard of each and every specific provision and as well the spirit hereof." The judgment was signed by L. W. P. Strickland, Jr., as attorney for the plaintiff former wife.

On June 11, 1970, Mr. Tuten filed an application for citation for contempt against his former wife, alleging that she was violating the two above-mentioned judgments in that she had since married an Air Force officer stationed in England, where she and the child were living for the duration of her husband's tour of duty of three or more years, and she refused to allow Mr. Tuten to bring the child home with him for his stipulated summertime visit with her on the grounds that this would interfere with the five-year-old child's education and necessitate the child's returning to England by herself. The applicant prayed that custody of the child be awarded to him.

The application alleged that John G. Kopp was attorney of record for appellant. Appellee demanded that service be made upon appellant and her purported attorney of record, Kopp, by certified mail and the court so ordered. In due course, return receipts bearing the signatures of appellant and her purported attorney of record were received by the clerk of the court and attached to the application.

When the rule nisi came on for hearing, appellant, through J. Baker McGee, of Gibson, McGee and Blount, filed a plea to the application for contempt, making the defenses of lack of jurisdiction over her person and insufficiency of service of process, and

alleging that she had had no attorney of record at or since the filing of the application except the firm which had been employed for the sole purpose of filing the said plea. The court heard argument and citation of authority upon the special appearance and found that legal service was had.

On July 9, 1970, the court entered an order holding the appellant in contempt and requiring her to deliver the child to appellee for the purpose of exercising his custodial rights under the previous judgments and to appear before the court at 10:00 a.m. on July 20, 1970, at which time the court would further consider the contempt and the appellee's application for change of custody. This order provided for service upon appellant by registered mail and upon J. Baker McGee by regular mail. The record affirmatively shows that the order was delivered to appellant on July 23, 1970, but no service on appellant's attorney, McGee, appears.

Thereafter, by judgment dated July 23, 1970, and entered July 24, 1970, the court found as a matter of fact that the July 9th order had been served upon appellant and her counsel as provided therein and that appellant had wilfully failed and refused to abide by said order, and awarded the custody to appellee with visiting rights to appellant. The appeal is from this judgment.

FELTON, Justice, dissenting in part. 1. "The superior court rendering the final order placing the custody of the parties' minor child in the appellant retains jurisdiction to enforce its order by attachment for contempt, notwithstanding the fact that subsequent to the rendition of the order the appellant may have removed [her] residence to another [jurisdiction]." *Ogletree v. Watson*, 223 Ga. 618, 619 (157 SE2d 464) and cit. Hence, the Superior Court of Ware County did not lose its *subject matter* jurisdiction to enforce its order by attachment for contempt by the mere fact of the appellant's removing her residence to England.

The next question is whether or not there was such service of the application for contempt as is prescribed by law so as to obtain jurisdiction of the appellant's *person.* The custody judgments here sought to be enforced by attachment for contempt are founded upon and are incidents of the divorce, alimony and custody suit and the habeas corpus proceeding in which they were granted, but this has been held to be a separate and independent

proceeding from the ones in which such visitation rights were granted, at least for the purposes of service. See *Connell v. Connell,* 221 Ga. 379, 380 (144 SE2d 722) and cit. For this reason, it was necessary to perfect service of the complaint and rule nisi on her in accordance with the appropriate statutory provisions governing service of independent actions where only the court rendering the original divorce and custody decree had jurisdiction to punish for contempt.

Prior to the effective date of the Civil Practice Act in 1967, the applicable statute governing such service was *Code Ann.* § 81-202 (Ga. L. 1799, Cobb 471; as amended), which required *personal* service. *Connell v. Connell,* supra, p. 380. That statute was specifically repealed by *Code Ann.* § 81A-201 (l) (Ga. L. 1966, pp. 609, 687; as amended) and replaced by the enactment of *Code Ann.* §§ 81A-104 (Ga. L. 1966, pp. 609, 610; as amended, Ga. L. 1969, p. 487) and 81A-105 (Ga. L. 1966, pp. 609, 615; as amended, Ga. L. 1967, pp. 226, 229). (§ 81A-104, rather than § 81A-105, is applicable in the present case.) Therefore, the *Connell* case, such cases as *Kirchman v. Kirchman,* 212 Ga. 488, 490 (93 SE2d 685) and *Sternbergh v. McClure,* 217 Ga. 278, 283 (122 SE2d 217), and all other cases to like effect based on the repealed statutes are not controlling in the situation here involved. *Code Ann.* § 81A-104 (d) provides for personal service of process in six specific situations, none of which is here involved. Additionally, § 81A-104 (d 7) provides for personal service "[i]n all other cases." We do not believe that this applies to the situation in the present case, however, for the reasons that, firstly, the majority of the other six situations under subsection (d) (hence, also number 7 by implication) patently involve service of process *within* the State; and secondly, personal service *outside* the State is specifically provided for in § 81A-104 (e 2). The latter subsection provides in part that "[p]ersonal service outside the State upon a natural person may be made (i) in any action where the person served is a resident of this State, and (ii) in any action affecting specific real property or status, or in any other proceeding in rem without regard to the residence of the person served." Even assuming that "outside the State" includes outside the country, since neither of the above two conditions exists in the present case, this provision does not apply.

Apparently, therefore, personal service is not the prescribed method of service in this case.

The only remaining method of service provided, is service by the publication of summons in situations "[w]hen the person on whom service is to be made *resides out of the State, or has departed from the State,* or cannot, after due diligence, be found within the State, or conceals himself to avoid the service of the summons . . ." § 81A-104 (e, 1, i) (Emphasis supplied.) This subsection goes on to provide for instances in which the address of the party on whom service is to be made is *unknown.* Since the address of the former wife was known and alleged by the applicant for the contempt citation, service by publication would seem to be inappropriate to the facts in the present case and, hence, not contemplated by the statute. *Code Ann.* § 81A-104 (i) provides as follows: "Alternative service.—The methods of service provided herein are cumulative, and may be utilized with, after, or independently of, other methods of service. Whenever a statute provides for another method of service, service may be made under the circumstances and in the manner prescribed by the statute. The provisions for service by publication herein provided shall apply in any action or proceeding in which service by publication now or hereafter may be authorized by law, and where by law special provision is made for service by publication, the procedure for such service by publication herein provided may be utilized in lieu thereof. *In all cases or special proceedings where the requirements or procedure for service, or both, are not prescribed by law, and in any situation where the provisions therefor are not clear or certain, the court may prescribe service according to the exigencies of each case, consistent with the Constitution.*" (Emphasis supplied.) From our analysis above, we conclude that "the requirements or procedure for service, or both" in the present case are apparently not prescribed by law and that, even if they are, "the provisions therefor are not clear or certain." Therefore, under § 81A-104 (i), the court did not err in prescribing service by certified mail upon the appellant. Such service was more effective, from the appellant's viewpoint, than service by publication (the only other method which might have been prescribed by § 81A-104), since she thereby had both the summons and the

complaint delivered to her address, rather than receiving notice merely by a publication of the summons alone in a newspaper. It is irrelevant that her purported "attorney of record" was also served (which we have held hereinabove to be no service at all under these circumstances), since valid, statutory service was had on the appellant herself as ordered, and found to have been had, by the trial court. Therefore, the trial court properly overruled the appellant's plea to the jurisdiction as to the application for contempt alone.

2. Since the appellant was properly served and her plea to the jurisdiction properly overruled, the trial judge did not err, as it is contended, in proceeding to conduct a hearing on the merits of the case. If appellant retained counsel for the sole purpose of filing the plea to the jurisdiction, as she contends, the court cannot be blamed for the fact that she did not provide for counsel to represent her in the further proceedings in the event that her plea to the jurisdiction be overruled (as it has been). Her failure to so provide was at her peril and she cannot now have the judgment set aside on the ground that she was not represented by counsel. Once she was legally served with process and her plea to the jurisdiction overruled, she was legally before the court and subject to its jurisdiction and processes. In this situation, *Code Ann.* § 81A-105, supra, governs. Subsection (a) thereof provides in part as follows: "The failure of a party to file pleadings in an action shall be deemed to be a waiver by him of all notices, including notices of time and place of trial, and all service in the action, except service of pleadings asserting new or additional claims for relief, which shall be served as provided by subsection (b) hereof." The fact that appellant received the notice of the second order of the court three days after the date on which she was to have appeared in court with the parties' minor child, is not a ground for setting aside the final judgment of contempt. Appellant's attorneys were either in court when the court announced the date of the final hearing or they could have been; therefore, she had at least constructive notice of such hearing. Under holdings too well-known to require citation, once a party is legally served with process and in court, he is charged with the responsibility of keeping himself informed as to the progress of his case.

The court did not err in its judgment finding the appellant in contempt of court.

The majority opinion recognizes the *exclusive* power and jurisdiction of the court rendering a judgment to entertain proceedings to punish for contempt for violations of the judgment, but then proceeds to emasculate this prerogative, which is essential to the efficacy of the court's judgments, by allowing parties bound by its judgments to completely avoid the effects of the judgments merely by the expedient of removing themselves from the court's jurisdiction and refusing to waive personal service (which service, as we have shown above, is no longer even required under our law as amended). Under this holding, the appellant mother can and may, if she so chooses, prevent the appellee father from even seeing his child for as long as the mother has custody, with the court which decreed visitation privileges in the father standing by, powerless to enforce them, and with no other forum available to the father in which to assert his parental rights!

I would affirm the judgment of the court overruling the defendant's plea to the jurisdiction and finding the defendant in contempt, and reverse the judgment awarding custody to the father, for the reasons stated in Division 2 of the majority opinion.