## EDNA BELLE WHITE, Respondent, v. LESLIE LEE WHITE, Appellant.

### Kansas City Court of Appeals, March 3, 1913.

1. **ABANDONMENT: Maintainance of Minor Child: Husband and Wife.** The plaintiff sued to recover compensation for the maintainance and support of a minor child. The defendant, the father of the child, obtained a divorce from the plaintiff, after the latter, with the child, had deserted him and gone to another State. Plaintiff now wishes to recover a personal judgment against the defendant for the support and maintainance of the child for a period of ten months after the decree. *Held*, that plaintiff was entitled to recover because it gave her the means to better the condition of the defendant's child.

2. ———: ———: **Jurisdiction.** When the defendant and the minor children are not within the jurisdiction of the court and a divorce is granted upon substituted service of process, the court cannot assume jurisdiction over the person of the children and award the custody to the plaintiff, but once having jurisdiction of the person of defendant the court retains it for the purpose of decreeing the custody of the children.

3. ———: **Custody of Children: Liability of Husband.** When the custody of the children is awarded to the wife, and provision is not made for their support out of the property of the husband, he still remains liable for their support. The father is also made, by statute, primarily the guardian of his children and charged with the care of their persons, education and estate (R. S. 1899, sec. 3478).

4. ———: ———: ———. The mere fact that the children stay with the mother, either voluntarily or by decree of court, is deemed insufficient to exonerate the father from his duty to provide for them.

Appeal from Henry Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*N. B. Conrad* for appellant.

*Guy Whiteman* and *C. I. Davis* for respondent.

JOHNSON, J.—This suit was instituted in the circuit court of Henry county in December, 1911, by

the divorced wife of defendant, to recover money expended by her for the support and maintenance of their minor child from January 11 to November 20, 1911. The petition alleges that the parties were husband and wife from December 14, 1904 to January 11, 1911; that on the latter date the circuit court of Henry county, in an action prosecuted by defendant, rendered a judgment and decree granting defendant a divorce from plaintiff on the ground of desertion; that at that time their minor child, Mildred, was living with plaintiff; that the court made no order relating to the child and since the rendition of the judgment plaintiff has had its care and custody and has been at an expense of twelve dollars per month in providing the child with the necessaries of life. Further it is alleged that plaintiff is "without means of support except as she earns the same for herself and said child but that defendant is the owner of valuable property both real and personal and is abundantly able to support said minor child." The prayer is for personal judgment against defendant in the sum of $123.60, the reasonable cost of the maintenance of the child for a period of more than ten months following the date of the judgment for divorce.

Defendant demurred to the petition on the grounds that "the court has no jurisdiction of the subject of the action," that "plaintiff has no legal capacity to sue," that "there is a defect of parties plaintiff," and that the petition "does not state facts sufficient to state a cause of action." The demurrer was overruled and defendant answered pleading defenses the nature of which will be disclosed in the questions of law we find it necessary to discuss and determine. A jury was waived and after hearing the evidence the court rendered judgment for plaintiff in accordance with the prayer of her petition. Defendant appealed.

The material facts of the case are as follows: The parties were married in Jackson county, Missouri, De-

cember 14, 1904, and lived together as husband and wife until July 1, 1907, when plaintiff without just cause deserted her husband and left the State, taking their infant child with her. Since that time the child has been with plaintiff continuously, has been supported by her, and it does not appear that defendant ever made any attempt to recover the child or manifested any paternal solicitude about her. The first thing he did after his wife's desertion was to bring suit for divorce in the circuit court of Henry county, returnable to the January, 1911, term of that court. Plaintiff then was living with the child in Chicago and constructive service was made on her by publication. Nothing was said about the child in the petition for divorce nor in the judgment subsequently rendered in favor of defendant. In the present answer defendant alleges that he is able and willing to support the child, provided he may have its custody, and he repeats the offer in his testimony. Further he testifies that he did not know where the child was living when he brought the divorce suit.

It does not appear that plaintiff ever attempted to conceal the whereabouts of the child from defendant or that defendant ever made any effort to discover where his child was living or to recover possession of her. Apparently he has been willing that the child should remain with her mother as long as her mother supported her.

This is not a case such as that of Libbe v. Libbe, 157 Mo. App. 610, where the wife brought an action at law against her husband during the pendency of the divorce suit to recover her expenses in supporting a minor child incurred after their separation. We held in that case that such issues were involved in the divorce suit and could be raised only in that proceeding. In the present case the alleged cause of action arose after the final determination of the divorce action in which, owing to the fact that both defendant in that

suit and the infant offspring of the marriage were beyond the jurisdiction of the courts of this State, the issue of the custody of the child and its maintenance were not involved and could not be litigated.  "If defendant and the minor children are not within the jurisdiction of the court and a divorce is granted upon substituted service of process, the court cannot assume jurisdiction over the person of the children and award their custody to plaintiff, but once having acquired jurisdiction of the person of defendant, the court retains it for the purpose of decreeing the custody of the children."  [14 Cyc. 804; Jennings v. Jennings, 85 Mo. App. 290.]

The judgment in the divorce suit did not determine issues pertaining to the custody and support of the infant and, therefore, is not a bar to the maintenance of the present action.

Since these issues were not involved in the divorce suit, the defendant cannot be said to have acquiesced in his wife's custody of the child from the mere fact that he did not seek to have his right of custody determined and enforced in that action, but we are moved to say from a careful consideration of the whole case as disclosed by the record, that the allegation of defendant in his answer that he is ready, able and willing to support the child if he can have possession of it, is not made in good faith but for the mere purpose of interposing a defense to plaintiff's demand.  In the first place defendant must be held to have known when he filed his answer that the issue of his alleged right to the custody of the child could not be inquired into and determined in the present action which, as stated, is a suit at law in the nature of *assumpsit* to recover a debt created by operation of law from the performance by plaintiff of a duty imposed by law on defendant. If defendant was unjustly deprived by plaintiff of the custody of their child he had his remedy which he could have had enforced in an appropriate action.  He

White v. White.

has refrained all these years from making any effort to assert his right and has suffered his wife to keep the child in peace until she moved in court to compel him to defray the cost of its support when, for the first time, he advances the plea that he would support the child if plaintiff would surrender it to him. The past conduct of plaintiff discloses that she would not voluntarily give up the child under any circumstances and as both she and her child are without the jurisdiction of the courts of this State, the hypocrisy of defendant's plea is apparent. His real position is that he is willing plaintiff should keep their child at her own cost and denies that he owes any duty to the infant as long as it remains in the custody of plaintiff. Counsel for plaintiff do not contend that defendant may be held liable on an implied contract to reimburse plaintiff for money already expended in the necessary support of the child, but base the cause of action on the primary duty imposed by law on the father to support his minor children. In substance the argument in support of plaintiff's position is that defendant should not be allowed to shift the performance of such primary duty to the shoulders of plaintiff whose means will not permit her to maintain the child in a manner suitable to its natural right to such support and care as the means of the father would justify.

On the other hand it is argued by defendant that since the destruction of the marital relation was caused by the misconduct of plaintiff and since the removal of the child from defendant to another State was an additional wrong committed by plaintiff, to allow her to recover compensation for services already performed and which were rendered in the perpetration of wrong, would be obnoxious to the most elementary principle of justice which precludes a wrongdoer from maintaining a cause springing out of his own culpable acts.

In the case of Fitler v. Fitler, 33 Pa. St. 50, the

wife, as in the case in hand, deserted the husband, taking their minor son with her. Afterward she brought an action at law against her husband to recover money already expended in the support of the child. The Supreme Court of Pennsylvania held she could not recover, saying in the opinion (page 56, *et seq.*) :

"Her reliance is on a constructive or fictitious contract, adopted by the law for the purpose of sustaining an action of *assumpsit* where a duty to pay arises out of the facts. [29 State R. 467.]

"Then the question is, what legal duty has the defendant violated in relation to this child or its mother? Did he wrong the mother by gratifying her wishes, and suffering her to keep their child which she had wrongfully carried off. Certainly not. A wrongdoer cannot complain that the injured party did not resist or seek redress. She cannot complain of the expense of being allowed to have her own way. This cannot be made plainer. Kindness to the mother's feelings for her son cannot be enforced by law; and when it is exercised, it cannot be made the ground of a legal duty to do more. We must treat her as in the wrong, because the divorce, at his suit for her desertion, must be taken as proof of it.

"Did the father wrong the child by not resisting the mother's wishes? Yes, if thereby the child was left without support, which is not the case. But to this the mother is the principal party; and how can she make her own wrong against another the ground of an action against him? She is claiming compensation for her own services and outlays, all growing out of a wrong done by her to him against whom she makes the claim. This cannot be allowed. The father is willing to take the child and support it himself. If she prefers to keep it, she can claim nothing from him as a right; and we cannot enforce the duty of generosity.

"When a man abandons his child and casts it upon the public, he becomes liable for its support. But it

White v. White.

is entirely impossible to treat a child as thus cast on the public, when the fact simply is, that the mother has deserted the father, and carries away the child and continues to support it. This is merely leaving it with her, until she chooses to restore it; and while she keeps it on such ground, she has no claim for compensation.''

To the same effect is the case of Fulton v. Fulton, 52 Ohio St. l. c. 240, where the Supreme Court of Ohio say:

''Although the separation and divorce were caused by the misconduct of the mother, it may nevertheless be true that the obligation of the father to reasonably provide for his children will follow them into the custody of the delinquent mother, when circumstances require them to be placed in her custody. If, however, under such circumstances, it does so follow them, the reason and limit of this obligation of the father should be found in the necessities of the children. As to them, the natural obligation of protection, nurture and maintenance, press with equal force upon the parents. By the divorce *a vinculo*, the mother is as completely absolved from the marital relation as she would be by death, and, if, in the course of the proceeding which ends in an absolute divorce, the minor children are put under her control, by her procurement or in response to her wishes, her direct obligation towards them so long as she retains them would seem to be founded upon as substantial considerations as if she were a widow. Their daily wants must be satisfied. Constant supervision may be necessary. Can their divorced mother, who has received them into her custody, abandon them in the one case and not in the other? We think not. By receiving them into her custody she should be held, as to them, to assume the obligations incident to that custody. If, under these circumstances, where her own misconduct has destroyed the family relation, and deprived the father of the custody and society of his children, she has in fact maintained her

White v. White.

children, she has no claim, legal or moral, to demand reimbursement from the father. She has simply discharged a duty cast upon her by the plainest principles of natural justice, for the reason that the necessity for it arose from her own misconduct."

The Supreme Judicial Court of Massachusetts in Baldwin v. Foster, 138 Mass. 449, appear to entertain the view of the law expressed in the opinions from which we have just quoted.

In all of these cases the generally accepted rule is acknowledged that the primary duty of supporting minor children is on the father and that such children who, of course, cannot be regarded as participating in the misconduct of either parent should not be deprived of the benefit of a proper performance by the father of his primary duty towards them by the fortuitous circumstance that their erring mother has them in custody and will not surrender them to the innocent and injured father. As we understand the facts in the cases considered by the Ohio and Pennsylvania courts, there was no substantial difference in the means of the respective parents. The wife was able to and did support the child in a manner suitable to its rights and was able to continue such support. The contests in those cases, therefore, appeared to be confined solely to the rights of the parents and as unaffecting the substantial interests and welfare of the child. We are loath to believe that either court would hold the wife could not recover for past services where it appeared that the welfare of the child demanded that her ability to give it suitable care and support in the future should be increased by means of the father's contributions, whether made in the form of payment for past services or as advances for future use. That a child suffered by its affluent father to remain in the custody of its divorced mother and through her poverty compelled to endure unnecessary hardships and deprivations must be condemned to continue in a state of exist-

ence wholly at variance with that it has the natural right to enjoy, because, forsooth, the father voluntarily has allowed himself to be deprived of its services, is a proposition too monstrous to merit serious consideration.

In this State the courts repeatedly have recignized the rule that the custody of a minor child may be awarded to the mother and the father still be compelled to defray the expenses of its reasonable maintenance and education and it is said in Biffle v. Pullam, 114 Mo. 50:

"In case of a divorce in which the custody of the children is awarded to the wife, and provision is not made for their support out of the property of the husband, he still remains liable for their support."

In Rankin v. Rankin, 83 Mo. App. 335, the St. Louis Court of Appeals considered a case very similar to the one at bar. The husband and father moved from this State to Texas and afterward obtained a divorce in that State on the ground that his wife had deserted him. He allowed her to retain the custody of their minor children and she reared and educated them out of means produced by her own labor. Afterward she brought a suit at law against him for reimbursement. Our sister court held she was entitled to recover on the broad ground that since the father neglected to assert his right to the custody of the children, such neglect did not absolve him from liability for the charges incurred by others in the necessary maintenance of his offspring. We quote from the opinion:

"The father is also made, by statute, primarily the guardian of his children and charged with the care of their persons, education and estate. [Rev. Stat. 1899, sec. 3478.] The neglect of this statutory duty in no way relieves him from the charges incurred by others in the necessary maintenance of his offspring. The divorce from his wife, does not divorce him from his children. The future wefare of his children is the

White v. White.

most powerful motive which nature and social duty implants in the bosom of the father. These obligations in the case at bar rendered it the duty of the defendant, to the extent of his liability, to rear and educate his children, which was none the less binding in that their custody was left with the mother. When this charge was neglected by him she seems to have consecrated her entire energies to its fulfillment. The money thus expended by her for a duty which he primarily owed, was just as legal a charge against him as if it had been contributed by a total stranger, for after the obtention of the divorce that was the legal status which she occupied towards the defendant. If a third party had supplied the children of defendant with the necessaries, a recovery might have been had to that extent without proving any further agreement than that implied by law for the fulfillment of the father's duty to the child; hence in this case there was no necessity for alleging or proving that the money furnished by the plaintiff was in accordance with an express agreement with the defendant.''

Subsequently the same court in the case of McCloskey v. McCloskey, 93 Mo. App. 393, reaffirmed the Rankin case. The court discuss and reject as unsound the doctrine of the cases in Pennylvania, Ohio and Massachusetts to which we have referred and hold that ''the mere fact that the children stay with the mother, either voluntarily or by decree of court, is deemed insufficient to exonerate the father from his duty to provide for them.'' Speaking of the decision in the Rankin case the court say: ''We regard the rule therein recognized as the better and wiser one and are unable to see any sound objection to it—unable to see why a father should not support his helpless offspring because he is no longer married to or living with their mother. If he is entitled to their custody, which is denied him, he has an ample remedy to enforce his

right, if he is a deserving person, and the denial affords no justification for his renouncing his paramount duty to protect them from want. This duty he has no right to shift onto the mother, often and almost always much less able to cope with the world and earn money than he is. Let him look to the legal remedy and invoke the courts regarding their society and custody; not selfishly refuse to provide them with the necessaries of life.''

We cannot give our assent to the doctrine thus broadly stated by our sister court. We do not entertain the view that a wife divorced on account of her misconduct has an unqualified legal right to compel the innocent husband to compensate her for expenses incurred by her in the support of their minor child whose custody she is suffered to retain. As between her and her injured husband, she can have no right born of her own wrongful conduct. The only right she may enforce is one derived from the natural right of their minor child whose interests the law will not allow to be unnecessarily impaired by the misconduct of either parent. If out of her own means she can maintain the child in a state equal to that the means of the father would permit, she has no recourse on him. The benefits she receives from the society and services of the child are compensation enough and she should not be allowed to enjoy the benefits of a relation so close and sacred and to cast its burdens on the father whom she has wronged. But where, as here, the means and ability of the mother are disproportionate to those of the father, the welfare of the child which always is the paramount consideration, demands the aid of the father and clothes the mother with a borrowed right unaffected by the taint of her own wrong. To permit plaintiff to recover in this action will be to give her the means with which to better the condition of defendant's child. Should we deny her the right of recovery, we would hold in practical effect that the child must be deprived in the future of benefits to which it is en-

titled by the plainest principles of natural right. We conclude the learned trial judge correctly decided the case and accordingly the judgment is affirmed.

All concur.