## YARBOROUGH v. YARBOROUGH.

No. 14. Argued October 12, 13, 1933.—Decided December 4, 1933.

*Mr. Stephen Nettles,* with whom *Mr. R. E. Whiting* was on the brief, for petitioner.

*Mr. Thomas M. Lyles,* with whom *Mr. C. Erskine Daniel* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

On August 10, 1930, Sadie Yarborough, then sixteen years of age, was living with her maternal grandfather, R. D. Blowers, at Spartanburg, South Carolina. Suing by him as guardian *ad litem,* she brought this action in a court of that State to require her father, W. A. Yarborough, a resident of Atlanta, Georgia, to make provision for her education and maintenance. She alleged "that she is now ready for college and is without funds and, unless the defendant makes provision for her, will be denied the necessities of life and an education, and will be dependent upon the charity of others."[1]   Jurisdiction was obtained by attachment of defendant's property.   Later he was served personally within South Carolina.

In bar of the action, W. A. Yarborough set up, among other defenses, a judgment entered in 1929 by the Superior Court of Fulton County, Georgia, in a suit for divorce brought by him against Sadie's mother.   He alleged that by the judgment the amount thereafter to be paid by him for Sadie's education and maintenance had been determined; that the sum so fixed had been paid; and that the judgment had been fully satisfied by him.   He claimed that in Georgia the judgment was conclusive of the matter here in controversy; that having been satisfied, it relieved him, under the Georgia law, of all obligation to provide for the education and maintenance of their minor child; and that the full faith and credit clause of the Federal Constitution (Art. IV, § 1) required the South Carolina court to give to that judgment the same effect in this proceeding which it has, and would have, in Georgia. The trial court denied the claim; ordered W. A. Yarborough to pay to the grandfather, as trustee, fifty dollars monthly for Sadie's education and support; and to pay

---

[1] There was no suggestion that plaintiff would be destitute or become a public charge.   Indeed, her grandfather testified that he was able and willing to provide $125 a month for her education and maintenance (the amount sought by plaintiff), if her father was unable to do so.

$300 as fees of her counsel. It directed that the property held under the attachment be transferred to R. D. Blowers, trustee, as security for the performance of the order. The judgment was affirmed by the Supreme Court of South Carolina. A petition for rehearing was denied, with opinion. 168 S.C. 46; 166 S.E. 877. This Court granted certiorari. 289 U.S. 718.

For sometime prior to June, 1927, W. A. Yarborough, his wife and their daughter Sadie had lived together at Atlanta, Georgia, where he then was, and ever since has been, domiciled. In that month, Sadie's mother left Atlanta for Hendersonville, N. C., where she remained during the summer. Sadie joined her there, after a short stay at a camp. In September, 1927, while they were at Hendersonville, W. A. Yarborough brought, in the Superior Court for Fulton County, at Atlanta, suit against his wife for a total divorce on the ground of mental and physical cruelty. Mrs. Yarborough filed an answer and also a cross-suit in which she prayed a total divorce, the custody of the child and " that provision for permanent alimony be made for the support of the respondent and the minor child above mentioned [Sadie], and for the education of said minor child." An order, several times modified, awarded to the wife the custody of Sadie and, as temporary alimony, sums " for the support and maintenance of herself and her minor daughter Sadie." Hearings were held from time to time at Atlanta. At some of these, Sadie (and also her grandfather) was personally present. But she was not formally made a party to the litigation; she was not served with process; and no guardian *ad litem* was appointed for her therein.

" Two concurring verdicts favoring a total divorce to plaintiff having been rendered," [2] a decree of total divorce,

---

[2] § 2944 of the Georgia Civil Code (1910) provides: " Divorces may be granted by the superior court and shall be of two kinds—total or from bed and board. The concurrent verdict of two juries, at different terms of the court, shall be necessary to a total divorce."

with the right in each to remarry, was entered on June 7, 1929; the wife was ordered to pay the costs; and jurisdiction of the case "was retained for the purpose of further enforcement of the orders of the court theretofore passed."[3]    Among such orders, was the provision for the maintenance and education of Sadie here relied upon as *res judicata*. It was entered on January 17, 1929 (after the rendition of the first verdict), and provided:

"Parties, plaintiff and defendant, having personally in writing, consented hereto, and their respective counsel of record having likewise consented in writing hereto,

"It is considered, ordered and adjudged that the following settlement be hereby made the order of the Court, the same being in full settlement of temporary and permanent alimony in said case, and in full settlement of all other demands of every nature whatsoever between the parties."

Then followed, after describing certain mortgages:

"It is considered, ordered and adjudged that said mortgages be, and they are hereby transferred, sold and assigned by the plaintiff, W. A. Yarborough to the defendant, Mrs. Susie B. Yarborough to the extent of One Thousand, Seven Hundred Fifty Dollars ($1,750.00), and the plaintiff, W. A. Yarborough, does hereby transfer, sell and assign said mortgages to R. D. Blowers, of Spartanburg, South Carolina, as Trustee for Sadie Yarborough, minor daughter of plaintiff and defendant, to the extent

---

[3] Custody of Sadie had been awarded to the mother; and it had been ordered that the father be "allowed the privilege of visiting his said minor daughter, and of having her with him, out of the presence of the defendant, on the second and fourth week-ends of each month, from the close of school hours Friday until Sunday night of said week ends, during school terms, and at like times during vacation; at which times the plaintiff shall be entitled to take said minor daughter on pleasure trips of reasonable distance returning her punctually at the conclusion of the allotted time."

of One Thousand, Seven Hundred Fifty Dollars ($1,750.00). . . . The amount to be thus received by R. D. Blowers as Trustee for Sadie Yarborough, minor daughter of plaintiff and defendant, shall be expended by him in his discretion for the benefit of the minor child, including her education, support, maintenance, medical attention and other necessary items of expenditure.

"Upon compliance with this order by the plaintiff, he shall be relieved of all payments of alimony and counsel fees, in said case, except that the payment due under the prior order of Court of the sum of Fifty Dollars ($50.00) for the month of January, 1929, [to Mrs. Yarborough for the support of herself and Sadie] shall be by him paid, in addition to the other amounts hereinbefore named. . . .

"The provisions of the order of the Court heretofore entered fixing the times and the places when plaintiff, W. A. Yarborough, shall have the right to visit and have with him, out of the presence of the defendant, the said Sadie Yarborough, minor daughter of plaintiff and defendant, are hereby continued in force."

W. A. Yarborough complied fully with this order.

By the law of Georgia, it is the duty of the father to provide for the maintenance and education of his child until maturity.[4] Wilful abandonment of a minor child, leaving it in a dependent condition, is a misdemeanor.[5] The mere loss of custody by the father does not relieve him of his obligation to provide for maintenance and education, even where the custody passes to the mother pursuant to a decree of divorce.[6] If the father fails to make such provision, any person (including a divorced wife)

---

[4] Georgia Civil Code (1910), § 3020.

[5] Georgia Penal Code (1910), § 116; *Jackson* v. *State*, 1 Ga. App. 723; 58 S.E. 272.

[6] *Brown* v. *Brown*, 132 Ga. 712, 715; 64 S.E. 1092.

who furnishes necessaries of life to his minor child, may recover from him therefor, unless precluded by the terms of the decree in the divorce suit or otherwise.[7] In case of total divorce, the court is authorized to make, by its decree, final or permanent provision for the maintenance and education of children during minority, and thus fix the extent of the father's obligation.[8] But even if the decree for total divorce fails to include a provision for the support of minor children, they cannot maintain in their own names, or by guardian *ad litem*, or by next friend, an independent suit for an allowance for education and maintenance.[9]

*First.* It was contended below in the trial court, and there held, that the provision of the decree of the Georgia court directing the payment to R. D. Blowers, trustee, of

---

[7] *Brown* v. *Brown*, 132 Ga. 712; .64 S.E. 1092; *Hall* v. *Hall*, 141 Ga. 361; 80 S.E. 992; *Hooten* v. *Hooten*, 168 Ga. 86, 90; 147 S.E. 373; *Garrett* v. *Garrett*, 172 Ga. 812; 159 S.E. 255; *Pace* v. *Bergquist*, 173 Ga. 112, 114; 159 S.E. 678.

[8] The order for permanent alimony for the child is a matter distinct from that for permanent alimony for the wife. See *Johnson* v. *Johnson*, 131 Ga. 606; 62 S.E. 1044. The applicable sections of the Georgia Civil Code (1910) annotated are: " § 2981. Alimony for children on final trial.—If the jury, on the second or final verdict, find in favor of the wife, they shall also, in providing permanent alimony for her, specify what amount the minor children shall be entitled to for their permanent support; and in what manner, how often, to whom, and until when it shall be paid; and this they may also do, if, from any legal cause, the wife may not be entitled to permanent alimony, and the said children are not in the same category; and when such support shall be thus granted, the husband shall likewise not be liable to third persons for necessaries furnished the children embraced in said verdict who shall be therein specified."

" § 2982. Judgments, how enforced.—Such orders, decrees, or verdicts, permanent or temporary, in favor of the children or family of the husband, may be enforced as those in favor of the wife exclusively."

[9] *Sikes* v. *Sikes*, 158 Ga. 406; 123 S.E. 694; *Hooten* v. *Hooten*, 168 Ga. 86; 147 S.E. 373. Compare *Maddox* v. *Patterson*, 80 Ga. 719; 6 S.E. 581; *Humphreys* v. *Bush*, 118 Ga. 628; 45 S.E. 911.

$1,750 to be " expended by him in his discretion for the benefit of the minor child, including her education, support, maintenance, medical attention and other necessary items of expenditure " was not intended to relieve the father from all further liability to support Sadie. This contention appears to have been abandoned. It is clear that Mrs. Yarborough, her husband and the court intended that this provision should absolve Sadie's father from further obligation to support her. That the term " permanent alimony " as used in the decree of the Georgia court, means a final provision for the minor child is shown by both the legislation of the State and the decisions of its highest court.[10] The refusal of the South Carolina court to give the judgment effect as against Sadie is now sought to be justified on other grounds.

*Second.* It is contended that the order or decree providing for Sadie's permanent support is not *res judicata* because it did not conform to the provisions of the Georgia law. The argument is that the controlling statute required such an order to be entered after the second or final verdict; and that since the order was entered before the second verdict and was not mentioned in it, the order was unauthorized and is void. The Georgia decisions have settled that a consent decree or order fixing permanent alimony for a minor child, at whatever stage of the divorce proceedings it may have been entered, has the same effect as if based upon, and specifically mentioned in, the second verdict of a jury; [11] and that such an order,

---

[10] See note 7. Also *Coffee* v. *Coffee,* 101 Ga. 787; 28 S.E. 977; *Johnson* v. *Johnson,* 131 Ga. 606, 608, 609; 62 S.E. 1044; *Gilbert* v. *Gilbert,* 151 Ga. 520, 523; 107 S.E. 490; *Gaines* v. *Gaines,* 169 Ga. 432, 434, 435; 150 S.E. 645.

[11] *Coffee* v. *Coffee,* 101 Ga. 787, 790; 28 S.E. 977: " In the present case, the parties dispensed with a jury trial upon the question of allowance of permanent alimony, and by consent invoked a decree of the court fixing the allowance upon the terms stated in the decree. This consent having been approved by the court in which the cause was

like any other judgment, becomes unalterable after the expiration of the term.[12]

*Third.* It is contended that the Georgia decree is not binding upon Sadie, because she was not a formal party to the suit, was not served with process and no guardian *ad litem* was appointed for her therein. In Georgia, as elsewhere, a property right of a minor can ordinarily be affected by legal proceedings only if these requirements are complied with.[13] But the obligation imposed by the Georgia law upon the father to support his minor child does not vest in the child a property right. This is shown by the fact, among other things, that the minor cannot maintain in his own name, or by guardian *ad litem* or by next friend, a suit against his father to enforce the obligation.[14] The provision which the Georgia law makes of permanent alimony for the child during minority is a legal incident of the divorce proceeding. As that suit embraces within its scope the disposition and care of minor children, jurisdiction over the parents confers *eo ipso* jurisdiction over the minor's custody and support. Hence, by the Georgia law, a consent (or other) decree in a divorce suit, fixing permanent alimony for a minor child is binding upon it, although the child was not served with process, was not made a formal party to the suit, and no guardian *ad litem* was appointed therein.[15]

pending after grant of the divorce, the court loses control over the subject, and the decree stands as other judgments against the husband."

[12] See *Wilkins* v. *Wilkins,* 146 Ga. 382; 91 S.E. 415; *Gilbert* v. *Gilbert,* 151 Ga. 520; 107 S.E. 490; *Gaines* v. *Gaines,* 169 Ga. 432, 433; 150 S.E. 645. The decree for the child's custody is, however, subject to modification at any time. *Brandon* v. *Brandon,* 154 Ga. 661; 115 S.E. 115.

[13] *Groce* v. *Field,* 13 Ga. 24; *Hill* v. *Printup,* 48 Ga. 452, 454.

[14] See cases in note 9.

[15] Compare *Kell* v. *Kell,* 179 Iowa 647, 650; 161 N.W. 634; *Snover* v. *Snover,* 10 N.J.Eq. 261, 262; *Marks* v. *Marks,* 22 S.D. 453, 457; 118 N.W. 694; *Wells* v. *Wells,* 11 App.D.C. 392, 394.

*Fourth.* It is contended that the order for permanent alimony is not binding upon Sadie because she was not a resident of Georgia at the time it was entered. Being a minor, Sadie's domicile was Georgia, that of her father;[16] and her domicile continued to be in Georgia until entry of the judgment in question. She was not capable by her own act of changing her domicile.[17] Neither the temporary residence in North Carolina at the time the divorce suit was begun,[18] nor her removal with her mother to South Carolina before entry of the judgment, effected a change of Sadie's domicile.[19] It is true that, under the Georgia Code, a minor may acquire a domicile apart from the father if he has "voluntarily relinquished his parental authority." But the mere fact that the parents were living separately at the time the suit for divorce was brought and that Sadie was with her mother, does not establish such relinquishment.[20] Compare *Anderson* v. *Watt,* 138 U.S. 694, 706. The character and extent of the father's obligation, and the status of the minor, are determined ordinarily not by the place of the minor's residence but by the law of the father's domicile.[21] Moreover, this is not a case where the scope of the jurisdiction acquired by the Georgia court rests upon the effectiveness of service by publication upon a nonresident. Mrs. Yarborough filed a cross-bill, as well as an answer; and in the cross-bill prayed "that provision for permanent alimony be made for the" support and education of Sadie. Thus

---

[16] Compare Georgia Civil Code (1910), § 2992; *Jackson* v. *Southern Flour & Grain Co.,* 146 Ga. 453; 91 S.E. 481; Civil Code (1910), § 2184.

[17] *Jackson* v. *Southern Flour & Grain Co.,* 146 Ga. 453; 91 S.E. 481.

[18] *McDowell* v. *Gould,* 166 Ga. 670, 671; 144 S.E. 206.

[19] Compare *Taylor* v. *Jeter,* 33 Ga. 195.

[20] *Hunt* v. *Hunt,* 94 Ga. 257; 21 S.E. 515.

[21] *MacDonald* v. *MacDonald,* 8 Bell & Murray (2d Series) 830; *Coldingham Parish Council* v. *Smith,* [1918] 2 K.B. 90. Compare *Irving* v. *Ford,* 183 Mass. 448; 67 N.E. 366; *Blythe* v. *Ayres,* 96 Cal. 532; 31 Pac. 915.

the court acquired complete jurisdiction of the marriage status and, as an incident, power to finally determine the extent of her father's obligation to support his minor child.[22]

*Fifth.* The fact that Sadie has become a resident of South Carolina does not impair the finality of the judgment. South Carolina thereby acquired the jurisdiction to determine her status and the incidents of that status. Upon residents of that State it could impose duties for her benefit. Doubtless, it might have imposed upon her grandfather who was resident there a duty to support Sadie. But the mere fact of Sadie's residence in South Carolina does not give that State the power to impose such a duty upon the father who is not a resident and who long has been domiciled in Georgia.[23] He has fulfilled the duty which he owes her by the law of his domicile and the judgment of its court. Upon that judgment he is entitled to rely.[24] It was settled by *Sistare* v. *Sistare,* 218 U.S. 1, that the full faith and credit clause applies to an unalterable decree of alimony for a divorced wife. The clause

---

[22] *Schroeder* v. *Schroeder,* 144 Ga. 119; 86 S.E. 224. Compare *State* v. *Rhoades,* 29 Wash. 61, 68; 69 Pac. 389; *Anderson* v. *Anderson,* 74 W.Va. 124; 81 S.E. 706; *State ex rel. Shoemaker* v. *Hall,* 257 S.W. (Mo.) 1047; *Laumeier* v. *Laumeier,* 308 Mo. 201; 271 S.W. 481; *Laumeier* v. *Laumeier,* 237 N.Y. 357; 143 N.E. 219; 242 N.Y. 501; 152 N.E. 401.

[23] It appeared that W. A. Yarborough, having married again, invited Sadie to his home in Atlanta and offered to maintain her there. She refused.

[24] To the effect that in civil law countries and the many jurisdictions which have adopted the civil law the duties of support are determined by the nationality or the domicile of the obligor, see Bar, International Law: Private and Criminal (Tr. Gillespie, 1883, §§ 102, 105); Fiore, Le Droit International Privé (4th ed. French tr. Antoine, 1907) §§ 627–629; Makarov, Précis de Droit International Privé (1933) 409–410; Lapradelle-Niboyet, Répertoire de Droit International (1929) Article: "Aliment" §§ 17–23.

Compare *Home Insurance Co.* v. *Dick,* 281 U.S. 397.

applies, likewise, to an unalterable decree of alimony for a minor child.[25]  We need not consider whether South Carolina would have power to require the father, if he were domiciled there, to make further provision for the support, maintenance, or education of his daughter.

*Reversed.*

MR. JUSTICE STONE, dissenting.

I think the judgment should be affirmed.

The divorce decree of the Georgia court purported to adjudicate finally, both for the present and for the future, the right of a minor child of the marriage to support and maintenance, by directing her father to make a lump sum payment for that purpose.  More than two years later, after the minor had become a domiciled resident of South Carolina, and after the sum paid had been exhausted, a court of that State, on the basis of her need as then shown, has rendered a judgment directing further payments for her support out of property of the father in South Carolina, in addition to that already commanded by the Georgia judgment.

For present purposes we may take it that the Georgia decree, as the statutes and decisions of the State declare, is unalterable and, as pronounced, is effective to govern the rights of the parties in Georgia.  But there is nothing in the decree itself, or in the history of the proceedings which led to it, to suggest that it was rendered with any purpose or intent to regulate or control the relationship of parent and child, or the duties which flow from it, in places outside the State of Georgia where they might later come to reside.  It would hardly be thought that Georgia, by judgment of its courts more than by its statutes, would attempt to regulate the relationship of parents and child domiciled outside of the State at the very time the decree

---

[25] Compare *Cowles* v. *Cowles*, 203 App. Div. (N.Y.) 405; 196 N.Y.Supp. 617.

was rendered; and, in the face of constitutional doubts that arise here, it is far from clear that its decree is to be interpreted as attempting to do more than to regulate that relationship while the infant continued to be domiciled within the State. But if we are to read the decree as though it contained a clause, in terms, restricting the power of any other state, in which the minor might come to reside, to make provision for her support, then, in the absence of some law of Congress requiring it, I am not persuaded that the full faith and credit clause gives sanction to such control by one state of the internal affairs of another.[1]

Congress has said that the public records and the judicial proceedings of each state are to be given such faith and credit in other states as is accorded to them in the state " from which they are taken." R.S. §§ 905, 906; 28 U.S.C.A., §§ 687, 688. But this broad language has never been applied without limitations. See *McElmoyle* v. *Cohen,* 13 Pet. 312. Between the prohibition of the due process clause, acting upon the courts of the state from which such proceedings may be taken, and the mandate of the full faith and credit clause, acting upon the state to which they may be taken, there is an area which federal authority has not occupied. As this Court has often recognized, there are many judgments which need not be given the same force and effect abroad which they

---

[1] It may be assumed for present purposes that the child was sufficiently represented in the Georgia proceedings. But the point is doubtful. See *Walder* v. *Walder,* 159 La. 231; 105 So. 300; *Graham* v. *Graham,* 38 Colo. 453; 88 Pac. 852. The reasoning of the opinion of the Court—that since Georgia does not give the child a cause of action it has no property right and need not have been represented—would lead to the conclusion that what was decided in Georgia was something quite different from that which was in litigation and decided in South Carolina; that the child's suit is upon a right afforded only by the law of South Carolina; and that the Georgia suit, giving no similar right but only a right to the mother, could have no effect upon the present litigation.

have at home, and there are some, though valid in the state where rendered, to which the full faith and credit clause gives no force elsewhere. In the assertion of rights, defined by a judgment of one state, within the territory of another, there is often an inescapable conflict of interest of the two states, and there comes a point beyond which the imposition of the will of one state beyond its own borders involves a forbidden infringement of some legitimate domestic interest of the other. That point may vary with the circumstances of the case; and in the absence of provisions more specific than the general terms of the congressional enactment [2] this Court must determine for itself the extent to which one state may qualify [3] or deny [4] rights claimed under proceedings or records of other states.

[2] The mandatory force of the full faith and credit clause as defined by this Court may be, in some degree not yet fully defined, expanded or contracted by Congress. Much of the confusion and procedural deficiencies which the constitutional provision alone has not avoided may be remedied by legislation. Cook, Powers of Congress under the Full Faith and Credit Clause, 28 Yale Law Journal, 421; Corwin, The " Full Faith and Credit " Clause, 81 University of Pennsylvania Law Rev. 371; cf. 33 Columbia Law Rev. 854, 866. The constitutional provision giving Congress power to prescribe the effect to be given to acts, records and proceedings would have been quite unnecessary had it not been intended that Congress should have a latitude broader than that given the courts by the full faith and credit clause alone. It was remarked on the floor of the Constitutional Convention that without the extension of power in the legislature, the provision " would amount to nothing more than what now takes place among all Independent Nations." Hunt and Scott, Madison's Reports of the Debates in the Federal Convention of 1787, p. 503. The play which has been afforded for the recognition of local public policy in cases where there is called in question only a statute of another state, as to the effect of which Congress has not legislated, compared with the more restricted scope for local policy where there is a judicial proceeding, as to which Congress has legislated, suggests the Congressional power.

[3] *McElmoyle* v. *Cohen,* 13 Pet. 312.

[4] *Grover & Baker Machine Co.* v. *Radcliffe,* 137 U.S. 287, 299.

More than once this Court has approved the doctrine that a state need give no effect to judgments for conviction of crime or for penalties, procured in a sister state, see *Wisconsin* v. *Pelican Insurance Co.*, 127 U.S. 265; *Huntington* v. *Attrill*, 146 U.S. 657; *Finney* v. *Guy*, 189 U.S. 335; see also *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 330, 337.[5] And the intervention of a sister state's judgment will not overcome a local policy against allowing to foreign corporations the use of local courts in settling foreign disputes. *Anglo-American Provision Co.* v. *Davis Provision Co.*, 191 U.S. 373;[6] compare *Kenny* v. *Supreme Lodge of Moose*, 252 U.S. 411.[7] The state of matrimonial domicile may preserve to its own resident his rights in the marriage status where another state has sought to terminate it without acquiring jurisdiction of his person, *Haddock* v. *Haddock*, 201 U.S. 562, even though terminated within the other state, cf. *Maynard* v. *Hill*, 125 U.S. 190.[8] The full faith and credit clause does not require one state, at the behest of the courts of another, to surrender its powers to decide what criminal

[5] The extent to which the doctrine may be applied to judgments for penalties has not been clearly defined. Leflar, Extrastate Enforcement of Penal and Governmental Claims, 46 Harvard Law Rev. 193; compare 33 Columbia Law Rev. 492, 507. And see *New York* v. *Coe Manufacturing Co.*, 162 Atl. 872 (N.J.) (New York judgment based on tax claims given full faith and credit); 42 Yale Law Journal, 1131.

[6] See also *Weidman* v. *Weidman*, 274 Mass. 118; 174 N.E. 206; *Palmer* v. *Palmer*, 265 Mass. 242; 163 N.E. 879; 42 Harvard Law Rev. 701.

[7] That corporations cannot invoke the privileges and immunities clause does not explain the difference between these two cases. Application of the doctrine of *forum non conveniens*, while more limited when applied to actions based on foreign judgments, is not altogether precluded. 33 Columbia Law Review 492, 502.

[8] But see Beale, Constitutional Protection for Divorce, 19 Harvard Law Rev. 586; Haddock Revisited, 39 Harvard Law Rev. 417; compare Harper, Collateral Attack upon Foreign Judgments, 29 Michigan Law Rev. 661, 679.

penalties it shall impose, to circumscribe, within limits, the classes of disputes to which its courts must give ear,[9] or to protect its residents from undue interference with the marriage relationship.

A statute, record or judgment of one state, establishing the right of an illegitimate or adopted child to inherit from his putative parent, may be given extra-state effect for many purposes, but it does not establish his right to inherit land in another state. See *Hood* v. *McGehee,* 237 U.S. 611; *Olmsted* v. *Olmsted,* 216 U.S. 386. Parties who have, in one state, litigated the proper construction of a will disposing of realty are not, by the judgment there, concluded in another state where the testator's realty is located. Cf. *Clarke* v. *Clarke,* 178 U.S. 186. Nor will a divorce decree seeking to apportion the rights of the parties to realty be conclusive with respect to land outside the state. *Fall* v. *Eastin,* 215 U.S. 1. The interest of a state in controlling all the legal incidents of real property located within its boundaries is deemed so complete and so vital to the exercise of its sovereign powers of government within its own territory as to exclude any control over them by the statutes or judgments of other states.

It would be going farther than this Court has been willing to go in any decision to say that the power of a state to pass judgment upon the sanity of its own citizen could be foreclosed by an earlier judgment of the court of some other state dealing with the same subject matter. Cf. *Gasquet* v. *Fenner,* 247 U.S. 16.

Similarly, it has been almost uniformly recognized that a divorce decree which by its terms, or by operation of law, forbids remarriage of one or both of the parties, can

---

[9] Cf. *Cole* v. *Cunningham,* 133 U.S. 107, with *Union Pacific R. Co.* v. *Rule,* 155 Minn. 302; 193 N.W. 161. See 39 Yale Law Journal, 719; cf. *Tennessee Coal, I. & R. Co.* v. *George,* 233 U.S. 354.

have no effect outside of the state which rendered it.[10] Jurisdictional requirements being satisfied, the decree is effective to end the marriage for all states, but enforcement of its prohibition against remarriage in another state, even though the parties do not take up their residence there, would infringe upon the interest which every state has to maintain the stability of a union entered into according to the laws of the place of celebration.[11]

---

[10] *In re Estate of Ommang*, 183 Minn. 92; 235 N.W. 529; *Bauer* v. *Abrahams*, 73 Colo. 509; 216 Pac. 259; *Dudley* v. *Dudley*, 151 Iowa 142; 130 N.W. 785. Sometimes the state granting the divorce will not recognize the validity of the later marriage. *Wilson* v. *Cook*, 256 Ill. 460; 100 N.E. 222, unless the party had changed his domicile before remarrying, *Pierce* v. *Pierce*, 58 Wash. 622; 109 Pac. 45. Thus the divorce proceedings, on the one hand, and the marriage record, on the other, are denied full credit. See Beale, Laughlin, Guthrie and Sandomire, Marriage and the Domicil, 44 Harvard Law Rev. 501; 16 Minnesota Law Rev. 172. The present case is not distinguished by arguing that in the divorce situation it is a question of faith and credit to be given to a statute and not to judicial proceedings. *Goodwin* v. *Goodwin*, 158 App. Div. 171, 173; 142 N.Y. Supp. 1102. While it is usually a statute that prescribes the disability which is to attach to the divorce, it is the judicial proceedings themselves which are in question, as much as in the present case, where the judgment for support is unalterable within the state by virtue of the Georgia statute. Without denying the validity of a marriage in another state, the privileges flowing from marriage may be subject to the local law. *State* v. *Bell*, 7 Baxt. 9 (Tenn.) (husband and wife of different races may be prohibited from cohabiting within state though lawfully married elsewhere); Restatement of Conflicts of Law, § 181.

[11] Further examples might be referred to. The policy of the state in which the foreign judgment is set up fixes the periods of limitations, and the priority which foreign judgment creditors may have. *McElmoyle* v. *Cohen*, 13 Pet. 312; *Cole* v. *Cunningham*, 133 U.S. 107, 112. A state may, under some circumstances, deny the authority of foreign officers to deal with things within its territory, see *Great Western Mining Co.* v. *Harris*, 198 U.S. 561, 576, even though the officer's action took place in the foreign state, *Clarke* v. *Clarke*, 178 U.S. 186, 194; *Hoyt* v. *Sprague*, 103 U.S. 613, 631. The limitation upon the doctrine of such cases which this Court has imposed in

Whatever view may be held of the particular restrictions upon the operation of the full faith and credit clause in these cases, the validity of the principle upon which they rest has never been denied. Its validity is likewise recognized in those cases where this Court has held that the Fourteenth Amendment denies to a state the power of unduly extending its authority beyond its own borders, by the mere expedient of rendering a judgment against one of whose person or property it has acquired jurisdiction. *New York Life Ins. Co.* v. *Head,* 234 U.S. 149; *Home Insurance Co.* v. *Dick,* 281 U.S. 397. Just as due process of law will not permit a state, by its judgment, to inflict parties " with a perpetual contractual paralysis " which will prevent them from altering outside of the state their contracts or ordinary business relations entered into within it, *New York Life Ins. Co.* v. *Head, supra,* 161, so full faith and credit does not command that the obligations attached to a status, because once appropriately imposed by one state, shall be forever placed beyond the control of every other state, without regard to the interest in it and the power of control which the other may later acquire. See *Bradford Elec. Light Co.* v. *Clapper,* 286

---

holding that certain statutory successors to corporations in a foreign state shall have the privilege of maintaining suit, *Converse* v. *Hamilton,* 224 U.S. 243; *Bernheimer* v. *Converse,* 206 U.S. 516, illustrates the appropriate function of this Court in balancing the interests of local and foreign sovereign. The extrastate force given to a voluntary assignment in receivership, as compared with the more restricted effect of an assignment which is commanded by court order, further demonstrates the nature of the full faith and credit mandate. See *Cole* v. *Cunningham,* 133 U.S. 107, 129; *Catlin* v. *Wilcox Silver-Plate Co.,* 123 Ind. 477, 482; 24 N.E. 250; *Zacher* v. *Fidelity Trust Co.,* 106 Fed. 593; Laughlin, Extra-territorial Powers of Receivers, 45 Harvard Law Rev. 429, 461 ff. The problems in relation to the extrastate consequences of the dissolution of a corporation are becoming important. Compare *Clark, Receiver,* v. *Williard,* 94 Mont. 508; 23 P. (2d) 959; cert. granted, *post,* p. 619, with *National Surety Co.* v. *Cobb,* 66 F. (2d) 323, cert. den., *post,* p. 692.

U.S. 145, 157, n. 7. Whatever difference there may be between holding that a judgment is invalid under the Fourteenth Amendment because it is " extra-territorial," and in holding that it is not entitled to full faith and credit although it does not infringe the Fourteenth Amendment, is one of degree, or of a difference in circumstances which may prevent the operation of the latter provision of the Constitution. The Georgia judgment with which we are now concerned does not infringe the Fourteenth Amendment, for Georgia had " jurisdiction " of the parties and subject matter at the time its judgment was rendered. The possibility of conflict of the Georgia judgment with the interest of South Carolina first arose when the minor transferred her domicile to South Carolina, long after the Georgia judgment was given.

The question presented here is whether the support and maintenance of a minor child, domiciled in South Carolina, is so peculiarly a subject of domestic concern that Georgia law can not impair South Carolina's authority. The subject matter of the judgment in each state is the duty which government may impose on a parent to support a minor child. The maintenance and support of children domiciled within a state, like their education and custody, is a subject in which government itself is deemed to have a peculiar interest and concern. Their tender years, their inability to provide for themselves, the importance to the state that its future citizens should be clothed, nourished and suitably educated, are considerations which lead all civilized countries to assume some control over the maintenance of minors.[12] The states very

---

[12] This control is particularly important in the case of the children of divorced couples. They are usually young; in Maryland over 60% are under ten years of age when divorce occurs. Divorces are often not contested and the intervention of a disinterested judge is frequently nominal. Allowances for children in the divorce court are typically small. Marshall and May, The Divorce Court, 31, 79–80, 82, 226–231, 323.

generally make some provision from their own resources for the maintenance and support of orphans or destitute children, but in order that children may not become public charges the duty of maintenance is one imposed primarily upon the parents, according to the needs of the child and their ability to meet those needs. This is usually accomplished by suit brought directly by some public officer,[13] by the child by guardian or next friend, or by the mother, against the father for maintenance and support.[14] The measure of the duty is the needs of the child and the ability of the parent to meet those needs at the very time when performance of the duty is invoked. Hence, it is no answer in such a suit that at some earlier time provision was made for the child, which is no longer available or

[13] Frequently a criminal statute provides as an alternative penalty for nonsupport of a child that the guilty party post a bond or otherwise provide for the future support of the child. Such a statute exists in South Carolina, § 1123 South Carolina Code, 1932, cf. Mason's 1927 Minn. Stat. § 10136. The state's special interest in securing the father's liability is emphasized not only by the frequency of penal measures, but also by the fact that in some places a statute is necessary before any suit can be maintained against the father. *Huke* v. *Huke*, 44 Mo. App. 308; *Rawlings* v. *Rawlings*, 121 Miss. 140; 83 So. 146; cf. *Hooten* v. *Hooten*, 168 Ga. 86; 147 S.E. 373; see Madden, Domestic Relations, 383. Contra: *Doughty* v. *Engler*, 112 Kan. 583; 211 Pac. 619; cf. *Craig* v. *Shea*, 102 Neb. 575; 168 N.W. 135. Likewise notable is the extensive repudiation of the view that the duty to support is correlative with the right to custody and services. See Jacobs, Cases on Domestic Relations, 772.

[14] The duty of support is also enforced through entertaining suits by third parties to recover for necessaries furnished. However, conflicting policies make this an unsatisfactory method, for the courts seek to discourage wrongful action on the part of wives or minors in leaving their homes and have consequently gone to some lengths in refusing to impose liability on the father unless he has been at fault in breaking up the home. *Baldwin* v. *Foster*, 138 Mass. 449; see *Mihalcoe* v. *Holub*, 130 Va. 425; 107 S.E. 704. Contra: *Maschauer* v. *Downs*, 289 Fed. 540; see *Birdsong* v. *Birdsong*, 182 Ky. 58; 206 S.W. 22; cf. *Sanger* v. *Trammell*, 198 S.W. 1175 (Tex.).

suitable because of his greater needs, or because of the increased financial ability of the parent to provide for them,[15] or that the child may be maintained from other sources.[16]

In view of the universality of these principles it comes as a surprise that any state, merely because it has made some provision for the support of a child, should, either by statute or judicial decree, so tie its own hands as to foreclose all future inquiry into the duty of maintenance however affected by changed conditions.[17]

---

[15] See *State* v. *Miller*, 111 Kan. 231; 206 Pac. 744; *Walder* v. *Walder*, 159 La. 231; 105 So. 300; *People* v. *Miller*, 225 Ill. App. 150; *Hilliard* v. *Anderson*, 197 Ill. 549, 552–553; 64 N.E. 326; see also *State* v. *Moran*, 99 Conn. 115; 121 Atl. 277; *McCloskey* v. *St. Louis Union Trust Co.*, 202 Mo. App. 28; 213 S.W. 538; *State* v. *Langford*, 90 Ore. 251; 176 Pac. 197. An attempt to relieve himself of liability by a settlement or other contract will normally be ineffectual. See *Harper* v. *Tipple*, 21 Ariz. 41; 184 Pac. 1005; *Edleson* v. *Edleson*, 179 Ky. 300; 200 S.W. 625; *Michaels* v. *Flach*, 197 App. Div. 478; 189 N.Y.Supp. 908, aff'g 114 Misc. 225; 186 N.Y.Supp. 899; *Van Roeder* v. *Miller*, 117 Misc. 106; 190 N.Y.Supp. 787; cf. *Henkel's Estate*, 13 Pa. Super. Ct. 337. Higher education is properly an object of a suit for an increased allowance. Cf. *Esteb* v. *Esteb*, 138 Wash. 174; 246 Pac. 27; *Hilliard* v. *Anderson*, 197 Ill. 549; 64 N.E. 326; *Commonwealth ex rel. Smith* v. *Gilmore*, 95 Pa. Super. Ct. 557; *Sisson* v. *Schultz*, 251 Mich. 553; 232 N.W. 253; *Moscow* v. *Marshall*, 271 Mass. 302; 171 N.E. 477.

[16] *Hunter* v. *State*, 10 Okla. Cr. 119; 134 Pac. 1134; *State* v. *Waller*, 90 Kan. 829; 136 Pac. 215; *Cruger* v. *Heyward*, 2 Desaus. 94, 110 (S.C.); *State* v. *Constable*, 90 W.Va. 515; 112 S.E. 410; *Gully* v. *Gully*, 111 Tex. 233; 231 S.W. 97; cf. *Taylor* v. *San Antonio Gas & Elec. Co.*, 93 S.W. 674 (Tex.). When suit is instituted by the wife considerations of equity as between husband and wife may obtrude, *McWilliams* v. *Kinney*, 180 Ark. 836; 22 S.W. (2d) 1003; *Fulton* v. *Fulton*, 52 Ohio St. 229; 39 N.E. 729; unless the wife is unable to support the child, *State* v. *Miller*, 111 Kan. 231; 206 Pac. 744; *White* v. *White*, 169 Mo. App. 40; 154 S.W. 872.

[17] Georgia seems to be the only state to do so. II Vernier, Family Laws, 196 ff. A similar attempt by the courts of another state has been held null and void and subject to collateral attack. See *Walder* v. *Walder*, 159 La. 231; 105 So. 300.

Even though the Constitution does not deny to Georgia the power to indulge in such a policy for itself,[18] it by no means follows that it gives to Georgia the privilege of prescribing that policy for other states in which the child comes to live.[19] South Carolina has adopted a different policy. It imposes on the father or his property located within the state the duty to support his minor child domiciled there. It enforces the duty by criminal prosecution [20]

---

[18] Cf. *Laumeier* v. *Laumeier,* 308 Mo. 201; 271 S.W. 481. And there could be no complaint if South Carolina chose to follow the Georgia determination. Cf. *Laumeier* v. *Laumeier,* 242 N.Y. 501; 152 N.E. 401.

[19] In the custody cases a very similar situation is presented. As conventionally stated, the rule has been that the most the full faith and credit clause can require is that the prior ruling shall be deemed conclusive in the absence of an asserted change in circumstances. See *Calkins* v. *Calkins,* 217 Ala. 378; 115 So. 866; cf. *People ex rel. Allen* v. *Allen,* 105 N.Y. 628; 11 N.E. 143; aff'g 40 Hun 611. In one state a distinction has been drawn between personal rights of the parents and the interest of the state in the welfare of the child: unless there is an allegation that the best interest of the child requires a change in custody the parties will be bound. *Wear* v. *Wear,* 130 Kan. 205; 285 Pac. 606; see *In re Bort,* 25 Kan. 308, 309. Another state gives credit to the extent that prior determinations of fact are deemed incontrovertible, but exercises an independent judgment of the conclusion to be drawn from them. *Commonwealth ex rel. Rogers* v. *Daven,* 298 Pa. 416; 148 Atl. 524. In no case has there been such an abject surrender as this Court now requires of South Carolina. A tendency may be discerned to give conclusive force to the determinations of the state wherein the child resides, as long as that residence continues, but to hold that upon change of residence the questions will be open in the state to which the change is made. *Ex parte Erving,* 109 N.J.Eq. 294; 157 Atl. 161, 164; *Milner* v. *Gatlin,* 139 Ga. 109, 113; 76 S.E. 857; *Steele* v. *Steele,* 152 Miss. 365; 118 So. 721; *In re Alderman,* 157 N.C. 507; 73 S.E. 126; *Griffin* v. *Griffin,* 95 Ore. 78, 84; 187 Pac. 598; *In re Groves,* 109 Wash. 112, 114; 186 Pac. 300; cf. *Barnes* v. *Lee,* 128 Ore. 655; 275 Pac. 661; see 80 University of Pennsylvania Law Rev. 712; 81 *id.* 970; Restatement of Conflict of Laws, §§ 153, 156. Reasonable latitude should be preserved to states where the child is found to take temporary police measures even though contrary to the terms of a decree of the state of residence. Cf. *Hartman* v. *Henry,* 280 Mo. 478; 217 S.W. 987.

[20] *Supra,* note 13.

and also permits suit by the minor child maintained by guardian *ad litem*. The measure of the duty is the present need of the child and the ability of the parent to provide for it. In this case the suit was begun by attachment of the father's property in South Carolina and by personal service of process upon him there. The court found that the lump sum paid for support of the child under the Georgia decree had been expended; that she was justifiably residing with her mother in South Carolina rather than with her father in Georgia; that she was then without financial resources and that, considering her station in life and the circumstances of her father, an allowance for the future of $50.00 a month for her education, maintenance and support would be fair and just; and this amount was ordered to be paid for that purpose from the attached property.

The opinion of this Court leaves it uncertain whether it is thought that the Constitution commands that the duty of support prescribed by Georgia, the domicile of the father, shall be dominant over that enjoined by South Carolina, the domicile of the child, in any event, or only after the duty has been defined by a judgment of Georgia.[21] It is attested by eminent authority that the Fourteenth Amendment, at least, does not prevent the state of the child's domicile from imposing the duty, *Restatement of Conflict of Laws*, § 498A,[22] a view confirmed by the uniform rulings that the father is liable to the criminal process of the state of the child's residence, though before, and at all times during his failure to conform to the duty demanded by that state, he has been domiciled elsewhere.

---

[21] Cf. *Home Insurance Co.* v. *Dick*, 281 U.S. 397, with *Kryger* v. *Wilson*, 242 U.S. 171.

[22] "A state may impose upon one person a duty to support another person if

" 1. The person to be supported is domiciled within the state, and the person to support is within the jurisdiction of the state; . . ."

*Kansas* v. *Wellman,* 102 Kan. 503; 170 Pac. 1052; *Ohio* v. *Sanner,* 81 Ohio St. 393; 90 N.E. 1007. The Fourteenth Amendment does not enable a father, by the expedient of choosing a domicile other than the state where the child is rightfully domiciled, to avoid the duty which that state may impose for support of his child. The reason seems plain. The locality of the child's residence must see to his welfare. While it might be more convenient for creditors of the father to look to the law of his residence as fixing all his obligations, it would seem that the compelling interest in the welfare of children, to which performance of the duties of parentage. is a necessary incident, outweighs commercial convenience; the more so where, as in this case, the obligation is to be satisfied from the father's property within the state of the child's domicile.

The conclusion must be the same when the issue is that of the credit to be given the prior Georgia judgment. Whatever may be said of the local interest which was deemed controlling in those cases in which this Court has denied to a state judgment. the same force and effect outside the state as is given to it at home, it would not seem open to serious question that every state has an interest in securing the maintenance and support of minor children residing within its own territory so complete and so vital to the performance of its functions as a government, that no other state could set limits upon it. Of that interest, South Carolina is the sole mistress within her own territory. See *Hood* v. *McGehee, supra,* 615. Even though we might appraise it more lightly than does South Carolina, it is not for us to say that a state is not free, within constitutional limitations, to regard that interest as fully as important and as completely within the realm of state power as the legal incidents of land located within its boundaries, or of a marriage relationship, wherever entered into but of which it is the domicile,

or its power to pass upon the sanity of its own residents, notwithstanding the earlier pronouncements of the courts of other states.

The case of *Sistare* v. *Sistare*, 218 U.S. 1, seems to have no bearing on the question presented here. There the plaintiff in error procured in the courts of New York a judgment of judicial separation awarding alimony for herself and child at a weekly rate. Leave was given to her by the judgment to apply for such orders as might be necessary for its enforcement or her protection. Her husband failed to pay the alimony, and she brought suit against him in the courts of Connecticut for the past due alimony which had accrued under the judgment. Upon an examination of the New York law this Court concluded that the judgment was final as to all past alimony and that the effect of it was to create a debt in New York, collectible there by execution, for all past due installments, and it held that the full faith and credit clause required the Connecticut courts to render a like judgment. The Court was careful to distinguish the case from one where the suit was brought to compel the payment of alimony in the future, see p. 16, compare *Lynde* v. *Lynde*, 181 U.S. 183, 187. The record discloses that neither party to the suit was domiciled in Connecticut. The wife relied on the New York judgment, as did the husband, whose only defenses were based on its effect in New York as not there conferring on her an unqualified right to the alimony. The Court was not asked, and did not assume, to pass upon the duty of the husband to support the wife or children independently of the New York judgment. No question whether the enforcement of the New York decree in Connecticut would infringe the authority of Connecticut to regulate or control the incidents of a marriage, one or both of the parties to which were then domiciled in the state, was either raised or considered.

The decision in *Sistare* v. *Sistare* lends no support to the contention that South Carolina can be precluded by a

judgment of another state from providing for the future maintenance and support of a destitute child domiciled within its own borders, out of the property of her father, also located there. Here the Georgia decree did not end the relationship of parent and child, as a decree of divorce may end the marriage relationship. Had the infant continued to reside in Georgia, and had she sought in the courts of South Carolina to compel the application of property of her father, found there, to her further maintenance and support, full faith and credit to the Georgia decree applied to its own domiciled resident might have required the denial of any relief. Cf. *Bates* v. *Bodie*, 245 U.S. 520; *Thompson* v. *Thompson*, 226 U.S. 551. But when she became a domiciled resident of South Carolina, a new interest came into being,—the interest of the State of South Carolina as a measure of self-preservation to secure the adequate protection and maintenance of helpless members of its own community and its prospective citizens. That in+ est was distinct from any which Georgia could concl·· ly regulate or control by its judgment, even though rendered while the child was domiciled in Georgia. The present decision extends the operation of the full faith and credit clause beyond its proper function of affording protection to the domestic interests of Georgia and makes it an instrument for encroachment by Georgia upon the domestic concerns of South Carolina.

MR. JUSTICE CARDOZO concurs in this opinion.